**Andre Lopez POLANCO,**
**Plaintiff–Appellant,**

v.

**U.S. DRUG ENFORCEMENT**
**ADMINISTRATION,**
**Defendant–Appellee.**

**No. 502, Docket No. 96–2905.**

United States Court of Appeals,
Second Circuit.

Submitted Oct. 30, 1997.

Decided Oct. 15, 1998.

(Andre Lopez Polanco, Fort Dix, NJ, pro se.)

(Thomas J. Maroney, United States Attorney, Northern District of New York; William C. Pericak, Assistant United States Attorney, Albany, NY, on the brief), for Defendant–Appellee.

Before: CARDAMONE, WALKER, and JACOBS, Circuit Judges.

JACOBS, Circuit Judge:

The *pro se* complaint alleges that on April 4, 1990, the United States Drug Enforcement Administration ("DEA") seized $6,920 in United States currency from plaintiff-appellant Andre Lopez Polanco, and that the government violated the Due Process Clause of the Fifth Amendment by failing to notify Polanco that it intended to forfeit the property. The United States District Court for the Northern District of New York (Scullin, *J.*) construed the complaint as a claim for the return of forfeited property under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); applied the three-year statute of limitations for a *Bivens* action; concluded that Polanco's action (filed on August 27, 1996) was time-barred; and dismissed the action *sua sponte*, as frivolous, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

For several reasons, we vacate the dismissal and remand for further proceedings. This action is not properly construed as a *Bivens* claim for damages arising from the intentional deprivation of property without due process of law; Polanco's cause of action more closely resembles the judicially-created cause of action to remedy a procedurally deficient forfeiture, as in *Boero v. Drug Enforcement Admin.*, 111 F.3d 301 (2d Cir. 1997) and *Weng v. United States*, 137 F.3d 709 (2d Cir.1998), which (for reasons stated *infra*) is not a *Bivens* action. The statute of limitations for such an action is six years, by virtue of 28 U.S.C. § 2401(a). Polanco's claim accrued when he discovered or had reason to discover that his property had been forfeited without sufficient notice, and it is impossible to ascertain that date on the present record. Even if the action is time-barred, the district court may consider whether it is saved by the doctrine of equitable tolling, on the theory that Polanco initially filed his action in the wrong court. Finally, it may be that Polanco's claim is barred by *res judicata* in light of an order in the District of Maine that dismissed a motion filed by Polanco in 1996; we cannot ascertain the nature of that order on the current record.

## BACKGROUND

The following facts are drawn from Polanco's papers, the public record, and the district court's Decision and Order.

Polanco alleges that on April 4, 1990, he and others were in a car that was stopped by New York State troopers near Syracuse, New York. The police questioned the passengers, searched the car without a warrant or consent, found $6,920 in cash in the car, seized the money, and turned it over to DEA agents who had been called to the scene. Polanco identified himself to the DEA agents as the owner of the currency, and they gave him a receipt for it. According to Polanco, the DEA agents told him that he was free to go, and that he would be notified regarding the status of the seized currency, but he was never so notified, or served with notice of forfeiture.

Polanco was subsequently convicted on possibly unrelated narcotics charges in the United States District Court for the District of Maine, and has been in federal prison since October 17, 1990. At some point after the close of his trial, Polanco filed a document in the District of Maine designated a "petition for return of personal property in the amount of $6,920.00 in U.S. currency." On June 10, 1996, Polanco filed what he styled a "motion to dismiss petition for return of currency for lack of jurisdiction and venue," and on July 10 he filed a motion to

withdraw his petition for the return of property. Polanco alleges that this motion was granted and that the District of Maine "dismissed" his claim so that he could "subsequently refile[ ] in New York which is the Court of proper Venue and Jurisdiction." Polanco's "petition for return of personal property" is unavailable to this Court, and its filing date is unknown. (The District of Maine has provided a partial docket sheet indicating that Polanco filed a motion on April 1, 1996 seeking the return of property pursuant to Fed.R.Crim.P. 41(e), but it is unclear whether that motion, which sought the return of $11,420 in cash and which was denied on May 31, 1996, has any bearing on this case. The clerk of the district of Maine has advised this Court's Staff Attorneys' Office that the May 1996 action was "archived" and that (a seeming *non sequitur*) it is therefore unavailable.)

Polanco filed this action on August 27, 1996 in the United States District Court for the Northern District of New York, along with an application to proceed *in forma pauperis.* In accordance with 28 U.S.C. § 1915(e)(2)(B)(ii), the district court considered whether the complaint stated a claim upon which relief could be granted before allowing the plaintiff to proceed. The district court construed the complaint as a claim brought pursuant to *Bivens.* Assuming that Polanco's cause of action had accrued when the money was seized on April 4, 1990 (more than six years before his complaint was filed), the court concluded that the action was barred by the three-year statute of limitations applicable to *Bivens* actions, and it dismissed the claim *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1). The government was never served with Polanco's papers.

Polanco filed this appeal and a motion to proceed *in forma pauperis,* which was granted by a panel of this Court. That panel advised the parties to brief two issues: (i) the timeliness of Polanco's claim under the Tucker Act, 28 U.S.C. § 1346; and (ii) the applicability of the equitable tolling doctrine.

## DISCUSSION

Prior to the enactment of the Prisoner Litigation Reform Act (the "PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act, Pub.L. No. 104–134, 110 Stat. 1321 (1996), the dismissal of a claim under 28 U.S.C. § 1915 was discretionary, and was reviewed for abuse of discretion. *See Denton v. Hernandez,* 504 U.S. 25, 33, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992). The PLRA's amendment to § 1915 expands the grounds for dismissal (including the failure of the complaint to state a claim upon which relief may be granted, the ground for dismissal in this case) and makes such dismissal mandatory. *See* 28 U.S.C. 1915(e)(2). The PLRA amendments raise a question as to whether the standard of review should now be *de novo. See Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 436–37 (2d Cir.1998). However, as we did in *Livingston,* we decline to address this question because we find that the district court's dismissal was improper regardless of the applicable standard of review.

### A. The Nature of the Claim

■ The district court construed Polanco's complaint as a *Bivens* action. However, *Bivens* provides a remedy only for intentional deprivations of property without due process of law. *See Onwubiko v. United States,* 969 F.2d 1392, 1399 (2d Cir.1992). It is unclear whether Polanco complains of an intentional or a negligent deprivation of his property, and he appears to seek equitable relief rather than money damages. Moreover, the only defendant is the DEA, and a *Bivens* action is brought against individual federal agents rather than against the federal agency. *Federal Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 484–86, 114 S.Ct. 996, 1005–06, 127 L.Ed.2d 308 (1994). For these reasons, and because a *pro se* complaint is liberally construed, *see Hughes v. Rowe,* 449 U.S. 5, 9–10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (*per curiam* ); *Robles v. Coughlin,* 725 F.2d 12, 15 (2d Cir.1983) (*per curiam* ), the district court erred by conclusorily construing Polanco's complaint as one brought pursuant to *Bivens.*

■ Polanco's allegation is that the government failed to "apprise [him] of the Government's intentions to forfeit the said cur-

rency.... Thus, [he] was never given a fair opportunity or adequate remedy at law to challenge the seizure of his property." Subject matter jurisdiction over this claim is found in 28 U.S.C. § 1331, the general federal question statute, because the complaint alleges a violation of the Fifth Amendment's Due Process Clause. *See Willis v. United States,* 787 F.2d 1089, 1093 (7th Cir.1986). In *Boero v. Drug Enforcement Admin.,* 111 F.3d 301 (2d Cir.1997), we discussed the judicially-created cause of action to remedy a forfeiture that is procedurally deficient under the Due Process Clause and the Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub.L. No. 91–513, tit. II, § 511, 84 Stat. 1236, 1276, *as amended by* Pub.L. No. 95–633, tit. III, § 301(a)(1), 92 Stat. 3768, 3777 (1978).[1] A district court has jurisdiction to consider a claim that one's property has been taken "accidentally, fraudulently, or improperly" by an agency of the United States. *Onwubiko,* 969 F.2d at 1398 (citing *The Rio Grande,* 90 U.S. (23 Wall.) 458, 465, 23 L.Ed. 158 (1874)). A claim that property was seized without proper notice, and therefore improperly, falls within this category. *Boero,* 111 F.3d at 305; *see also Robinson v. Hanrahan,* 409 U.S. 38, 40, 93 S.Ct. 30, 31, 34 L.Ed.2d 47 (1972) (*per curiam*) (due process requires government to afford notice that is "reasonably calculated" to be efficacious); *Weng v. United States,* 137 F.3d 709, 713 (2d Cir.1998) (same).

We have held that such a claim is a "civil 'claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department,'" *Onwubiko,* 969 F.2d at 1398–99 (quoting 28 U.S.C. § 1346(a)(2)); that sovereign immunity for such a claim is waived by the Tucker Act; and that the substantive claim is a *Bivens* action. *See id.*

However, this passage in *Onwubiko* has become suspect, and may have been implicitly overruled by *Meyer,* in which the Supreme Court held that an individual cannot bring a constitutional claim for money damages against a federal agency, *see Meyer,* 510 U.S. at 484–86, 114 S.Ct. at 1005–06. The Supreme Court declined, for several reasons, to "expand the category of defendants against whom *Bivens*-type actions may be brought to include not only federal *agents,* but federal *agencies* as well." *Id.* at 484, 114 S.Ct. at 1005.[2] Thus, we believe that the part of *Onwubiko* which holds that a claim against the DEA for damages arising from a procedurally inadequate forfeiture may be construed as arising under *Bivens* is no longer good law.

---

1. The Comprehensive Drug Abuse Prevention and Control Act of 1970 confers authority on the DEA to effect forfeiture of currency and other property on the ground that it was used or acquired in connection with a drug-related offense. *See* 21 U.S.C. § 881(a)(6). Section 881(d) adopts the forfeiture procedures of the Tariff Act of 1930, *see* 21 U.S.C. § 881(d), which provides for "administrative forfeitures" of property worth $500,000 or less, *see* 19 U.S.C. §§ 1607–1609. The DEA must publish notice of its intent to effect forfeiture in a newspaper of general circulation once a week for at least three successive weeks, and it must send "[w]ritten notice of seizure together with information on the applicable procedures ... to each party who appears to have an interest in the seized article." 19 U.S.C. § 1607(a). The DEA can declare the property forfeited if no party asserts an interest in it within 20 days of the first publication. *See* 19 U.S.C. § 1609. If a proper claim is filed, the DEA must refer the proceeding to the United States Attorney for the district in which the seizure was made, who then brings a forfeiture action in federal court. *See* 19 U.S.C. § 1608. In the judicial proceeding (but not in the administrative proceeding), the DEA is required to show probable cause for the forfeiture. Once the DEA comes forward with evidence of probable cause, the burden shifts to the claimant to show that the property belongs to him and is not drug-related. *See Boero,* 111 F.3d at 304.

2. The Court reasoned that it had implied a cause of action against the officials in *Bivens* "in part *because* a direct action against the Government was not available," *Meyer,* 510 U.S. at 485, 114 S.Ct. at 1005; therefore, it was illogical "to imply a damages action based on a decision that presumed the *absence* of that very action." *Id.* Moreover, allowing plaintiffs to circumvent qualified immunity by suing the agency directly "would mean the evisceration of the *Bivens* remedy, rather than its extension," because aggrieved parties would sue the agency rather than the official, and *Bivens*' effectiveness as a deterrent would be undermined. *Id.* Finally, the Court was concerned that "a direct action for damages against federal agencies ... [would] creat[e] a potentially enormous financial burden for the Federal Government." *Id.* at 486, 114 S.Ct. at 1006.

In any event, *Onwubiko* is not quite on point here, because *Onwubiko* characterized the claim there as a *Bivens* action, and therefore (by definition) a claim for money damages, whereas Polanco seeks equitable relief. Although Polanco ultimately seeks to possess himself of a sum of money, the remedy he seeks is to correct a procedural deficiency by vacating the administrative forfeiture and requiring the DEA to either (i) return the property or (ii) commence a new forfeiture proceeding that complies with agency procedure and due process of law. This relief is equitable in nature, notwithstanding the fact that the property at issue is currency. *See, e.g., Bowen v. Massachusetts*, 487 U.S. 879, 893, 108 S.Ct. 2722, 2732, 101 L.Ed.2d 749 (1988) (defining equitable remedy in part as an action for specific relief "which may include an order providing for ... the recovery of specific property *or monies* ") (internal quotation marks and citation omitted); *Crocker v. United States*, 125 F.3d 1475, 1477 (Fed.Cir.1997) (claim seeking "the recovery of identified property and monies [is] an action that is equitable in nature and sharply distinguishable from an action at law for damages"); *Marshall Leasing, Inc. v. United States*, 893 F.2d 1096, 1099 (9th Cir. 1990) ("Return of forfeited property is an equitable remedy."); *Montgomery v. Scott*, 802 F.Supp. 930, 934 (W.D.N.Y.1992). The Tucker Act does not waive sovereign immunity as to this category of claims, because that statute "has long been construed as authorizing only actions for money judgments and not suits for equitable relief against the United States." *Richardson v. Morris*, 409 U.S. 464, 465, 93 S.Ct. 629, 630–31, 34 L.Ed.2d 647 (1973) (*per curiam* ).

Where, as here, the complaint seeks only equitable relief, sovereign immunity is waived by the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. *See Boero*, 111 F.3d at 305 n. 4; *Willis*, 787 F.2d at 1093. Section 702 waives sovereign immunity in an action seeking equitable relief from wrongful agency action, except where (i) the action also seeks monetary relief; (ii) there is an adequate remedy at law; or (iii) the action is precluded from judicial review by statute or committed by law to agency discretion. *See* 5 U.S.C. §§ 701 & 702. Here, the "wrongful agency action" alleged is a departure from the DEA's forfeiture procedures; (i) the action does not seek any monetary relief; (ii) the claimant has no adequate remedy at law, because he cannot sue the DEA for damages;[3] and (iii) this type of claim against the DEA is neither statutorily precluded from judicial review nor committed to agency discretion by law.

## B. The Statute of Limitations

In *Boero*, we stated in *dictum* that an action seeking to correct a procedurally deficient forfeiture is "subject to the general six-year statute of limitations for suits brought against the United States found in 28 U.S.C. § 2401." *Boero*, 111 F.3d at 305 n. 5. § 2401(a), the catch-all statute of limitations for federal claims, provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a).

Polanco's claim—that the DEA failed to comply with its own forfeiture procedures—can be construed as a challenge to agency action. *See Onwubiko*, 969 F.2d at 1398 (concluding that claimant had presented a claim for, *inter alia*, "abuse of agency discretion under its own regulations"); *Willis*, 787 F.2d at 1093. Section 2401(a) supplies the statute of limitations for suits challenging agency action under the APA. *See, e.g., Sierra Club v. Slater*, 120 F.3d 623, 631 (6th Cir.1997) ("It ... appears beyond question that the six-year statute of limitations of § 2401(a) applies to actions brought pursuant to the APA."); *Dunn–McCampbell Royalty Interest, Inc. v. National Park* Serv., 112

---

**3.** Moreover, he cannot bring an action in the Court of Claims under the Tucker Act, because the Court of Claims lacks jurisdiction to resolve a claim that property was forfeited unconstitutionally. *See Crocker*, 125 F.3d at 1477. The Court of Claims itself has repeatedly held that the proper forum for the vindication of a constitutional right violated in the forfeiture process is an equitable action in the district court. *See, e.g., Lark v. United States*, 17 Cl.Ct. 567, 569–70 (1989); *Noel v. United States*, 16 Cl.Ct. 166, 172 (1989); *see also United States v. Woodall*, 12 F.3d 791, 794 (8th Cir.1993).

F.3d 1283, 1286 (5th Cir.1997); *Pennsylvania Dep't of Public Welfare v. United States Dep't of Health & Human Services,* 101 F.3d 939, 944–45 (3d Cir.1996); *James Madison Ltd. by Hecht v. Ludwig,* 82 F.3d 1085, 1093–94 (D.C.Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 737, 136 L.Ed.2d 676 (1997). For that reason, and because no closer analog can be found to which any other statute of limitations would apply, we hold that the appropriate statute of limitations period for Polanco's claim is six years.

The government argues here that we must "borrow" an appropriate limitations period from an analogous state or federal law, that the appropriate analogs in federal law afford a three-year statute of limitations, and that the district court therefore properly dismissed Polanco's complaint as time-barred. Such borrowing is appropriate when it is possible to make an educated guess as to what statute of limitations Congress intended to govern a particular cause of action, *see, e.g., DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 158, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983), while resort to the catch-all statute of limitations is appropriate when congressional intent is not discernible. *See Long v. Frank,* 22 F.3d 54, 57 (2d Cir.1994). The cause of action that seeks to remedy a procedurally deficient forfeiture is judicially created, and (unlike, say, the cause of action created in *Bivens* ) it is not closely analogous to any statutory cause of action. We conclude that evidence is lacking to show what Congress intended here.

The government urges us to borrow the same statute of limitations applicable to *Bivens* actions and actions brought under 42 U.S.C. § 1983. In *Wilson v. Garcia,* 471 U.S. 261, 276, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985), the Supreme Court held that all § 1983 actions brought within a single State are governed by that State's statute of limitations for personal injury actions.[4] In *Chin v. Bowen,* 833 F.2d 21, 23–24 (2d Cir. 1987), we held that the same statute of limitations should apply to a *Bivens* action, which resembles actions under § 1983, the principal

difference being that a *Bivens* action remedies a constitutional violation by a federal—rather than a state—agent. In *Chin,* we reasoned that the two forms of action (*Bivens* and § 1983) "are not significantly dissimilar … in terms of [i] the interests being protected, [ii] the relief which may be granted, and [iii] the defenses which may be asserted," and we therefore determined that the same statute of limitations should apply. *Id.* at 23 (citation omitted).

In each of these three respects, Polanco's claim differs from a *Bivens* action and a suit brought under § 1983.

*(i) The interests being protected.* It is true that Polanco's forfeiture claim, like a claim under § 1983 or *Bivens,* is intended to redress the violation of constitutional rights. However, the forfeiture claim remedies one specific type of constitutional violation (the forfeiture of one's property without due process of law), while § 1983 and *Bivens* protect a broad spectrum of constitutional rights. At the same time, the purpose of the forfeiture claim is a limited one: to ensure that the federal agency complies with its own regulations and with due process in carrying out forfeiture proceedings. The causes of action established by § 1983 and *Bivens,* by contrast, are punitive in nature, because they are intended to prevent intentional violations of the Constitution. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole,* 504 U.S. 158, 161, 112 S.Ct. 1827, 1830, 118 L.Ed.2d 504 (1992). Similarly, "the purpose of *Bivens* is to deter *the* [federal] *officer* " from infringing individuals' constitutional rights. *Meyer,* 510 U.S. at 485, 114 S.Ct. at 1005; *see also Carlson v. Green,* 446 U.S. 14, 21, 100 S.Ct. 1468, 1473, 64 L.Ed.2d 15 (1980) ("Because the *Bivens* remedy is recoverable against individuals, it is a more effective deterrent than [a] … remedy against the United States.").

*(ii) The relief sought.* The relief available to Polanco, too, differs from that sought in *Bivens* and § 1983 cases: Polanco seeks a new administrative or judicial proceeding based on a prior deviation from policy, not

---

4. In *Owens v. Okure,* 488 U.S. 235, 249–50, 109 S.Ct. 573, 582, 102 L.Ed.2d 594 (1989), the Court held, more specifically, that where a state

has more than one statute of limitations for a personal injury action, the general residuary provision governs all § 1983 actions.

money damages or an injunction against the continuation of an allegedly unconstitutional governmental practice.

*(iii) The defenses which may be asserted.* Polanco's claim is against the agency, not against the individual federal agents, as under *Bivens* and § 1983. *See* 42 U.S.C. § 1983; *Meyer*, 510 U.S. at 485–86, 114 S.Ct. at 1005–06. The defenses that may be asserted are therefore different as well. In particular, qualified immunity—which often raises complicated and difficult questions regarding the knowledge and intent of federal actors—is not an issue here, because the defendant is the government agency itself. *Compare Montgomery*, 802 F.Supp. at 933 (qualified immunity not an issue in suit against United States seeking the return of forfeited property), *with Meyer*, 510 U.S. at 485, 114 S.Ct. at 1005 (noting that *"Bivens* clearly contemplated that official immunity would be raised") (citing *Bivens*, 403 U.S. at 397, 91 S.Ct. at 2005), *and Eversole v. Steele*, 59 F.3d 710, 717 (7th Cir.1995) ("[Q]ualified immunity is often raised as a defense to a § 1983 action.").

We conclude that Polanco's claim differs significantly from suits brought under *Bivens* and § 1983 "in terms of the interests being protected, the relief which may be granted, and the defenses which may be asserted." *See Chin*, 833 F.2d at 23. Accordingly, we decline to extend the reasoning of *Chin* by applying the state personal injury statute of limitations to a constitutional claim alleging a procedurally deficient forfeiture. Instead, because Polanco's claim is judicially created and is not closely analogous to any statutory cause of action with its own statute of limitations, we hold that it is governed by the six-year catch-all statute of limitations provided by 28 U.S.C. § 2401(a).

## C. The Accrual Date

■ Polanco's cause of action accrued when he discovered or had reason to discover that his property had been forfeited without sufficient notice. *See Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993). The district court assumed that the cause of action accrued when the currency was seized on April 4, 1990. But the specific constitutional violation alleged—the permanent deprivation of

Polanco's property without notice—did not occur until sometime later, when the property was forfeited. *See Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp.*, —— U.S. ——, ——, 118 S.Ct. 542, 549, 139 L.Ed.2d 553 (1997) (cause of action accrues when plaintiff has a "complete and present" cause of action and "can file suit and obtain relief") (citation and quotation marks omitted). Accordingly, this action accrued at the earliest of the following dates:

- at the close of the forfeiture proceedings, however soon after the seizure; or
- if no forfeiture proceedings were conducted, at the end of the five-year limitations period during which the government is permitted to bring a forfeiture action, *see Boero*, 111 F.3d at 305, at which time the claimant—without other notice—had reason to know that the forfeiture proceedings had begun (or that the property was being held) without due process.

Because the district court dismissed Polanco's complaint *sua sponte*, before the government had been served with Polanco's papers or had prepared a response, the record does not indicate whether or when forfeiture proceedings took place. We are therefore unable to tell when the limitations period began. On remand, the district court should give the government the opportunity to present evidence of the circumstances surrounding the forfeiture proceedings.

We appreciate that, because a claimant has six years in which to file his claim after it accrues, the claimant may sometimes have a total of eleven years post-seizure to begin complaining about the obvious and overt deprivation of his property. The government, of course, is in a position to avoid such a delay. Under the DEA's internal regulations, notice of forfeiture proceedings must be given to interested parties known at the time of seizure "as soon as practicable," and in any event within 60 days of the seizure. Dep't of Justice Directive No. 93–4 (Jan. 15, 1993), *reprinted in* 1 David B. Smith, *Prosecution and Defense of Forfeiture Cases*, app. 6B, at 6–37 (1997); *see also Boero*, 111 F.3d at 304 n. 3. Moreover, *Weng* requires that actual, personal notice to incarcerated claimants be given in an undeniable and demonstrable way. *See* 137 F.3d at 714. The

government's compliance with these two directives will tend to foreclose the possibility of a claimant bringing a valid suit to recover property a decade after its seizure.

We do not exclude the possibility of a declaratory proceeding that the claimant may bring before the government chooses to commence forfeiture proceedings in order to determine the status of a chattel seized by the government.

### D. Tolling

 Polanco filed his complaint in the United States District Court for the Northern District of New York on August 27, 1996—more than six years after his claim accrued on April 4, 1990. However, on remand the district court may consider that the claim is saved by the federal equitable tolling doctrine. That doctrine allows a district court to toll the statute of limitations where, *inter alia,* a plaintiff initially "asserted his rights in the wrong forum." *Johnson v. Nyack Hosp.,* 86 F.3d 8, 12 (2d Cir.1996) (internal quotation marks, citations, and alterations omitted). To avail himself of this doctrine, the plaintiff must show that he "pass[ed] with reasonable diligence through the period [he] seeks to have tolled." *Id.* It appears that Polanco made at least one attempt to recover his currency before filing this action in the Northern District of New York—the motion submitted in the District of Maine after the close of his criminal case. That motion was filed in the wrong court, because the currency was seized in New York, and Rule 41(e) provides that a motion for the return of seized property must be made in "the district court for the district in which the property was seized." Fed. R.Crim.P. 41(e). On the record before us, it is impossible to tell whether the district court denied this motion or whether Polanco withdrew it. On remand, the district court should consider whether Polanco is entitled to the benefit of the equitable tolling doctrine.

It is also possible that the six year statute of limitations may be tolled in other limited situations; however, we need not reach that question here.

Moreover, because the record does not reveal whether the motion was denied on the merits, and whether it was denied with prejudice, it is impossible for this Court to determine whether Polanco's claim is barred by *res judicata.* This too should be considered on remand.

### CONCLUSION

The judgment of the district court is vacated. We remand for further proceedings consistent with this opinion.