**Manuel O. ADAMES, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 98–6030.

United States Court of Appeals, Second Circuit.

Submitted Dec. 1, 1998.

Decided March 2, 1999.

Manuel O. Adames, Oakdale, LA, Pro Se.

Stephen J. Riegel, Assistant United States Attorney for the Eastern District of New York (Zachary W. Carter, United States Attorney, Varuni Nelson, Assistant United States Attorney, of counsel), for Defendant–Appellee.

Before: VAN GRAAFEILAND, CABRANES and NOONAN,* Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

Manuel O. Adames appeals *pro se* from an order of the United States District Court for the Eastern District of New York (Raymond J. Dearie, *Judge*), dismissing Adames's action for return of approximately $720,000 seized at the time of his arrest for attempted purchase of narcotics. The district court held, without explanation, that Adames's complaint was untimely. In the alternative, and apparently in reference to the government's motion for summary judgment, the court stated that "the plaintiff's allocution as part of his guilty plea resolves all material facts in the government's favor." We do not decide whether Adames's complaint was timely. We do agree with the district court, however, that Adames's statements at his plea allocution conclusively establish that he was not entitled to a return of the property. Accordingly, we affirm.

## I.

Adames and co-defendant Franklin A. Liranzo were arrested on January 20, 1989 at a hotel in Queens, New York, where they arrived as arranged to purchase a quantity of heroin from an undercover agent. At the time of their arrest, Adames and Liranzo had in their possession approximately $720,000 in cash, which was seized by federal agents. On April 19, 1989, both defendants pled guilty to a superseding information charging them with attempting to possess with intent to distribute an amount of heroin in excess of 100 grams, in violation of 21 U.S.C. § 841(a)(1). During the course of Adames's plea allocution, the following discussion of the drug transaction ensued between Adames and Judge Dearie:

The Court: .... Mr. Adames, would you tell me what you recall about the events of January 20th?

The Defendant Adames: Yes. I went. We went to go get a package of drugs.

The Court: You made arrangements beforehand?

The Defendant Adames: Yes.

The Court: With whom did you make those arrangements?

The Defendant Adames: With the undercover.

The Court: And what—you negotiated an amount and a price?

The Defendant Adames: We had spoken but we hadn't come to any agreement yet.

The Court: Did you speak over the phone or in person?

The Defendant Adames: Personally.

The Court: So you were going there to complete the negotiations and effect the purchase?

The Defendant Adames: Yes.

The Court: Did you have money with you?

The Defendant Adames: Yes.

The Court: How much money did you have?

The Defendant Adames: I don't really remember. Something like $20,-000. No, no, no, no.

\* \* \*

My part was $20,000. The rest of it wasn't mine but there was a total of about $723,000.

Transcript at 27–28. Following Adames's guilty plea, the district court sentenced him on August 18, 1989 to, *inter alia*, 135 months of imprisonment followed by a five-year term of supervised release.

On August 8, 1989—at a time when Adames apparently was incarcerated pending sentencing—the government filed an

---

\* The Honorable John T. Noonan, Jr., of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

*in rem* complaint pursuant to 21 U.S.C. § 881(a)(6),[1] seeking civil forfeiture of the currency seized from Adames and Liranzo, which it referred to as "currency in the sum of $714,182.00, more or less." The complaint states that "[o]n information and belief, the currency was the property of Manuel O. Adames and Franklin A. Liranzo." At the request of the United States Attorney's Office, the United States Marshals Service attempted to notify Adames by mail of the pending action.[2] In particular, notice was sent by certified mail on August 15, 1989 to the address at which Adames had resided until his incarceration. Not surprisingly, the notice did not reach Adames and was returned undelivered. The district court, having received no response or claim from any person interested in the currency, issued a decree of forfeiture on September 12, 1989.

On May 23, 1997, apparently having learned or suspected that the currency in question had been forfeited to the government, the incarcerated Adames filed the present action in the district court. Although his pleading was captioned "Motion for Return of Property," this document explicitly invited the district court to instead deem it a civil complaint. The pleading alleged that the government had seized "approximately $723,000" but "has never served [Adames] with a Notice of Seizure or Forfeiture, or any other type of action for the money seized." Accordingly, Adames contended that the forfeiture violated his Fifth Amendment due process rights and that the property should be returned to him.

The district court immediately assigned a new, civil docket number to Adames's case, implicitly treating his pleading as a new civil complaint, rather than as a motion in his completed criminal case. *See, e.g., Weng v. United States*, 137 F.3d 709, 711 n. 1 (2d Cir.1998) (where criminal proceedings against the person moving for return of seized property have already been completed, a district court should treat such a motion as a civil complaint). Thereafter, the government filed a motion seeking either (a) dismissal, pursuant to Fed.R.Civ.P. 12, on the ground that Adames's action was time-barred, or (b) summary judgment, on the ground that Adames's admissions at his plea allocution established that he was not entitled to a return of the property. Adames filed responsive papers, which addressed only the issue of timeliness.

On February 2, 1998, the district court entered the following order, reproduced here in its entirety:

> The complaint is dismissed as untimely. In any event, the plaintiff's allocution as part of his guilty plea resolves all material facts in the government's favor. The action is hereby dismissed.

Adames's timely appeal followed.

## II.

The government argues now, as it did below, that Adames's action was time-

---

1. The statute provides, in relevant part, as follows:

The following shall be subject to forfeiture to the United States and no property right shall exist in them:

. . . . .

(6) All moneys, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

21 U.S.C. § 881(a).

2. In addition, the government published notice of the forfeiture action on three successive days in the *New York Post*. Curiously, the notice refers only to the amount of currency at issue and the date on which the forfeiture complaint was filed; it mentions neither the names of putative property owners nor the date or location of the seizure. The government, understandably, does not argue here that this sort of notice is adequate.

barred by an applicable six-year statute of limitations. The government is clearly correct to assert that a six-year statute of limitations applies to actions, like this, that allege property to have been forfeited without sufficient notice. *See Boero v. Drug Enforcement Admin.*, 111 F.3d 301, 305 n. 5 (2d Cir.1997); *see generally* 28 U.S.C. § 2401(a) (providing a six-year limitations period for "every civil action commenced against the United States"). Less obvious, however, is the date on which Adames's cause of action accrued—that is, the date on which the statute of limitations began to run.

The government's initial brief on appeal argued that the cause of action accrued on the date the property was seized—January 20, 1989. If this were correct, then the six-year statute of limitations would have expired on January 20, 1995—that is, well before Adames's May 23, 1997 filing of the present action.

However, after the case was submitted to this panel, the government filed a letter pursuant to Fed. R.App. P. 28(j),[3] drawing our attention to the recent decision in *Polanco v. Drug Enforcement Admin.*, 158 F.3d 647 (2d Cir.1998). Although the government's letter did not discuss the import it drew (or that we should draw) from the *Polanco* decision, it specifically quoted the following passage from *Polanco*:

> The district court assumed that the cause of action accrued when the currency was seized on April 4, 1990. But the specific constitutional violation alleged— the permanent deprivation of Polanco's property without notice—did not occur until sometime later, when the property was forfeited. Accordingly, this action accrued at the earliest of the following dates:

> • at the close of the forfeiture proceedings, however soon after the seizure; or

> • if no forfeiture proceedings were conducted, at the end of the five-year limitations period during which the government is permitted to bring a forfeiture action....

Government's 28(j) Letter, dated November 18, 1998, at 1–2 (quoting *Polanco*, 158 F.3d at 654 (citations omitted)).

Although the quoted language from *Polanco* clearly rejects the government's assumption that the statute of limitations began to run on the date of seizure, the government did not, upon alerting us to *Polanco*, withdraw its claim that Adames's action was untimely. We therefore infer that the government believes the quoted language from *Polanco* to support the underlying argument that Adames's cause of action accrued more than six years prior to the May 23, 1997 filing of this action. The passage does state that the cause of action accrues "at the earliest of" two dates, one of which is "the close of the forfeiture proceedings, however soon after the seizure." *Polanco*, 158 F.3d at 654. Adames's forfeiture proceedings were closed with the district court's September 12, 1989 issuance of a decree of forfeiture. If Adames's cause of action accrued on that date, the six-year statute of limitations would have expired on September 12, 1995—approximately 20 months prior to the filing of this action.

However, the *Polanco* court also stated that the cause of action would not accrue until Polanco "discovered or had reason to discover that his property had been forfeited without sufficient notice." *Id.*(citing *Leon v. Murphy*, 988 F.2d 303, 308 (2d

---

**3.** This rule provides, in pertinent part, as follows:

> When pertinent and significant authorities come to the attention of a party after the party's brief has been filed, or after oral argument but before decision, a party may promptly advise the clerk of the court, by letter, with a copy to all counsel, setting

> forth the citations. There shall be a reference either to the page of the brief or to a point argued orally to which the citations pertain, but the letter shall without argument state the reasons for the supplemental citations.

Fed. R.App. P. 28(j).

Cir.1993)). The *Polanco* opinion does not explain how the panel might have reconciled this statement with the first "bullet point" quoted above. It is conceivable that the *Polanco* court meant that the conclusion of forfeiture proceedings could, by itself, charge the claimant with the knowledge ordinarily necessary to effectuate accrual. Alternatively, it is conceivable that the *Polanco* court believed that the initial seizure would put some or all claimants on inquiry notice of the ultimate disposition of their property—including forfeiture. However, the court did not articulate or justify either of these propositions, and they are not immediately obvious.

While we may be presented in the future with a more suitable opportunity to consider further the accrual principles sketched out in *Polanco,* our disposition of the merits of the instant case allows us to pretermit the question. Even if we assume, *arguendo,* that Adames's action was timely filed, we affirm, for the reasons stated infra, the district court's judgment dismissing Adames's complaint.

## III.

■ We turn now to the merits of Adames's claim that he has a right to the return of the property in question, because it was forfeited without sufficient notice and, therefore, in violation of due process. The government concedes on this appeal that Adames did not receive legally adequate notice of the relevant forfeiture proceedings.[4] The government therefore concedes that, apart from the statute of limitations defense, Adames has a right to, in effect, re-open the 1989 decree of forfeiture and seek a fresh determination of his claim to the property in question. *See Boero,* 111 F.3d at 307; *United States v. Giovanelli,* 998 F.2d 116, 119 (2d Cir.1993). Nevertheless, the gov-

ernment argues that the district court properly held that Adames's own statements at his plea allocution, quoted above, conclusively demonstrate that he had forfeited any interest he may have once held in the currency. We agree and thus affirm the grant of summary judgment for the government.

■ We review *de novo* a grant of summary judgment, *see Kracunas v. Iona College,* 119 F.3d 80, 86 (2d Cir.1997), construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor, *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Maguire v. Citicorp Retail Servs., Inc.,* 147 F.3d 232, 235 (2d Cir.1998). "A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 202 (2d Cir.1995). A criminal defendant's self-inculpatory statements made under oath at his plea allocution "carry a strong presumption of verity," *United States v. Maher,* 108 F.3d 1513, 1530 (2d Cir.1997) (quoting *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)) (internal quotation marks omitted), and are generally treated as conclusive in the face of the defendant's later attempt to contradict them, *see United States v. Gonzalez,* 970 F.2d 1095, 1101 (2d Cir.1992) (no evidentiary hearing necessary where criminal defendant makes allegations that simply contradict his statements made under oath at plea allocution); *see also United States v. Bambulas,* 571 F.2d 525, 526 (10th Cir. 1978) (statements at plea allocution are conclusive absent credible reason "justifying departure from their apparent truth").

---

4. The notice issue here is distinct from the statute-of-limitations notice issue discussed above. For statute of limitations purposes, the issue is whether—and when—the property owner had sufficient knowledge *after* entry of the forfeiture order. For due process purposes, the issue is whether the property owner had adequate notice *before* entry of the forfeiture order.

Under the relevant forfeiture statute, "[a]ll moneys ... intended to be furnished by any person in exchange for a controlled substance," 21 U.S.C. § 881(a)(6), are among the classes of property "subject to forfeiture to the United States," *id.* § 881(a), and no property right exists in them, *see id.* Adames admitted at his plea allocution that he and his co-defendant met with a contact (who turned out to be an undercover agent) in order to complete negotiations with him for the purchase of heroin and that the co-defendants brought with them approximately $720,000 in currency. In that same allocution, Adames suggested that only $20,000 of this sum belonged to him. Regardless of whether Adames once had a property interest in some or all of the currency seized, his statements indicate that such property interest was legally forfeited to the government upon the co-defendants' attempt to use such currency to effectuate a purchase of contraband narcotics. Because Adames, in his response to the government's summary judgment motion, has failed to adduce any evidence undermining the "strong presumption" that his plea allocution statements were accurate, *see, e.g., Maher,* 108 F.3d at 1530, the district court properly granted the government's motion for summary judgment.

We have carefully examined all of Adames's other arguments on appeal and have found them to be without merit.

### IV.

To summarize:

(1) We need not determine whether Adames's action was timely commenced.

(2) Assuming for the argument that Adames's action was timely commenced, and thus reaching the merits of his claim for the return of the currency forfeited by the government, we conclude that Adames's admissions at his plea allocution conclusively demonstrate that he was not entitled to a return of the property at issue.

(3) Accordingly, we affirm the order of the district court granting summary judgment in favor of the government and dismissing Adames's complaint.