**[DO NOT PUBLISH]**

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT

_____

**No. 05-13195**
**Non-Argument Calendar**

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 13, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 92-00314-CR-ODE-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

INOCENTE CAPOTE,
a.k.a. Tony Capote,
a.k.a. Tony Brown,
a.k.a. Anthony Brown,

Defendant-Appellant.

_____

**Appeal from the United States District Court**
**for the Northern District of Georgia**

_____

**(December 13, 2005)**

Before CARNES, PRYOR and FAY, Circuit Judges.

**PER CURIAM:**

Inocente Capote, a federal prisoner proceeding pro se, appeals the district court's denial of his motion for return of property under Federal Rule of Criminal Procedure 41(g), which was construed as a motion to set aside forfeiture under 18 U.S.C. § 983(e). On appeal he argues that (1) the district court erred by finding that his motion was time-barred; (2) he was entitled to equitable tolling; and (3) the application of § 983, enacted after the forfeiture proceedings in this case were completed, violates the Ex Post Facto Clause of the Constitution. For the reasons set forth more fully below, we affirm.

On September 22, 2004, Capote filed a pro se motion for return of property pursuant to Rule 41(e) (now Rule 41(g)). In it, Capote stated that, on September 7, 1990, the Federal Bureau of Investigation (FBI) and Drug Enforcement Administration (DEA) seized $39,390 of U.S. currency and jewelry from him.[1] Capote then argued that the government had violated his Fifth Amendment due process rights because it failed to notify him that the afore-mentioned property would be forfeited and, thus, deprived him an opportunity for a hearing. Included with the motion was Capote's personal affidavit describing various pieces of jewelry seized by the FBI and DEA.

---

[1] The money and jewelry were seized pursuant to a search warrant and, in addition to the money and jewelry, the government seized 10 kilograms of cocaine, leading to an indictment for possession with the intent to distribute cocaine. A jury convicted Capote, and he was subsequently sentenced to life imprisonment.

The government responded that the FBI had processed the jewelry and money in question and initiated administrative forfeiture proceedings. In connection with the money, in April 1992, the FBI mailed two notices to Capote, one to his last known address, and another in care of the United States Marshals Service (USMS) because, at that time, Capote was in USMS custody. With respect to the jewelry, the FBI mailed three notices, one in May 1992 to Capote's last known address, one in May 1992 in care of the USMS in Fort Worth because Capote was in its custody, and one in August 1992 in care of the Federal Corrections Institution where Capote was incarcerated. The notices outlined the procedure for contesting the administrative forfeiture. A notice of the seizures and forfeitures was also published in the Atlanta Journal & Constitution, a newspaper with general circulation. With respect to the currency, publication was made on May 4, 11, and 18, 1992, and with respect to the jewelry, publication was made on May 25, June 1, and June 8, 1992. After receiving no claims for the currency or the jewelry, the FBI administratively forfeited the currency on July 27, 1992, and the jewelry on November 16, 1992.[2]

---

[2] The government's exhibits included (1) two sworn declarations by Debra Lemaster, a paralegal specialist at FBI headquarters who had access to records relating to the forfeiture of the currency and the jewelry; (2) copies of the letters, envelopes, and return receipts of notices mailed to Capote; (3) copies of the publication printed in the AJC; and (4) the final declarations of forfeiture. Also included was the sworn statement of Vickie Burge, an employee of the USMS, who confirmed that Capote was in USMS custody from March 6 until September 3, 1992, and was transferred from Johnson County Jail in Fort Worth, Texas to a Federal

The government first argued that the district court lacked jurisdiction to entertain Capote's motion under Rule 41(g) because the exclusive remedy available to Capote was found at § 983(e). However, the government argued that Capote's motion was filed beyond the § 983(e)(3)'s five-year statute of limitations. The government argued in the alternative that even if 28 U.S.C. § 2401(a)'s six-year statute of limitations applied to Capote's motion, it was time-barred because it was filed 14 years after the seizure and 12 years after the forfeiture. The government further noted that, in October 1992, Capote filed a motion to suppress all of the evidence seized from his apartment and, therefore, was aware of the seizure of the currency and jewelry. Thus, the government argued that Capote's claim was barred by the doctrine of laches because he offered no excuse for his delay in challenging the forfeiture.

In reply, Capote argued that the district court had equitable jurisdiction to hear his motion for return of property and requested that his pro se pleadings be liberally construed. He further alleged that, because his motion asserted a Fifth Amendment violation, the court had jurisdiction under 28 U.S.C. § 1331. Next, Capote argued that his claim did not accrue until a fellow inmate informed him that any seizure of property had to be preceded by notice under the Fifth Amendment.

---

Correctional Institute on July 27, 1992.

Thus, he argued that his motion was not time-barred because he had never been notified of the forfeiture, and, therefore, his claim did not accrue until he received the government's response and examined the exhibits submitted. Capote further responded that his claim was not barred by laches because the government was responsible for any delay as a result of its constitutionally deficient notice. Capote argued that the record in this case failed to show when he received any mail while in detention at Johnson County Jail and that the methods for mail delivery at both Johnson County and the FCI in Fort Worth were sufficient. Finally, Capote argued that he was entitled to equitable tolling because any delay in filing was due solely to the government's inadequate notice, and he had exercised diligence upon learning that the government had violated his due process rights.

The district court denied Capote's motion, finding that Capote was not entitled to relief under Rule 41(g) because his exclusive remedy for challenging the forfeiture on grounds of improper notice was under § 983(e). The court then found that Capote's motion was time-barred under § 983(e)(3)'s five-year statute of limitations because Capote filed his motion more than 12 years after the government forfeited its final notice of forfeiture.

On appeal, Capote argues that the district court erred by applying the five-year statute of limitations set forth in § 983(e)(3) when denying his motion as

time-barred. Instead, he argues that the six-year statute of limitations set forth in § 2401(a) applies, and because his cause of action accrued when he discovered or had reason to discover that his property had been forfeited without sufficient notice, his claim could not have accrued until after he had filed his motion and the government had filed its response. Capote also argues that his motion was not barred by laches because his delay in filing the motion was due to the government's insufficient notice. Capote also asserts he was entitled to equitable tolling of the statute of limitations for the same reason.

We review a district court's interpretation and application of a statute of limitations de novo. See United States v. Cattrell, 252 F.3d 1193, 1198 (11th Cir. 2001) (reviewing applicability of the five-year statute of limitations in 19 U.S.C. § 1621 for civil forfeitures of proceeds traceable to narcotics activity under 21 U.S.C. § 881). We note at the outset that the district court construed Capote's Rule 41(e) motion for a return of property as an § 983(e) motion to set aside a forfeiture, thus triggering the five-year statute of limitations in § 983(e)(3). We decline to address whether this was correct because even if the six-year statute of limitations set forth in § 2401(a) applied, Capote's motion would still be time barred.

Assuming without deciding that the district correctly construed Capote's motion as one to set aside the forfeitures, section 983(e), which took effect on

6

August 23, 2000, provides "the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute." 18 U.S.C. § 983(e)(5). A motion to set aside a forfeiture under § 983(e) "may be filed not later than 5 years after the date of final publication of notice of the seizure of the property." 18 U.S.C. § 983(e)(3). Here, Capote filed his motion 12 years after the final notices of publication of the seizure of both the currency and jewelry, and his motion, therefore, was time-barred under § 983.

In the alternative, Capote argues that the forfeiture occurred in 1992, prior to § 983's passage, and, therefore, 28 U.S.C. § 2401(a)'s six-year "catch-all" statute of limitations should apply. Assuming without deciding that Capote is correct, § 2401(a) provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). The core issue under § 2401(a) is when Capote's claim accrued. To date, this Court has not addressed the question of when a claim accrues under § 2401(a). Capote urges this Court to apply the test set forth by the Second Circuit in Polanco v. United States Drug Enforcement Admin., 158 F.3d 647 (2d Cir. 1998), and the government has not objected to the use of this test.

The Second Circuit has held that a claim accrues under § 2401 when the

plaintiff "discovered or had reason to discover that his property had been forfeited without sufficient notice." Polanco, 158 F.3d at 654. In that case, the record did not reflect whether or when the defendant had his property forfeited, but the Second Circuit ruled that the defendant's claim would have begun to accrue at the earlier of two possible dates: (1) at the close of forfeiture proceedings, or (2) if no forfeiture proceedings had begun, when the five-year statute of limitations for the government to initiate forfeiture proceedings concluded. Id. As Capote's suit was filed more than 12 years after the forfeitures in this case had concluded, even following the Polanco rule, his present motion would be untimely under § 2401(a).

Moreover, taking a broader stance than the Second Circuit, the Fourth Circuit has held that a claimant's cause of action for inadequate notice of forfeiture accrues under § 2401 at the earlier of two dates: "when he first became aware that the government had declared the [property] forfeited, or when an inquiry that he could reasonably have been expected to make would have made him aware of the forfeiture." United States v. Minor, 228 F.3d 352, 359 (4th Cir. 2000); see also United States v. Rodriguez-Aguirre, 264 F.3d 1195, 1214 (10th Cir. 2001) (holding that a claimant's cause of action accrues at the earlier of two dates: "(1) the date on which the claimant discovered that the property was forfeited, or (2) the date on which the claimant could reasonably be expected to have made an inquiry that

8

would have made him aware of the forfeiture."). Capote argues he did not become aware of the forfeiture until 2004. However, Capote could reasonably have inquired about his property 12 years earlier, when he knew it had been seized, as evidenced by his filing a motion to suppress on October 6, 1992. Therefore, even applying the Fourth Circuit's rule, his motion is time-barred. Accordingly, giving Capote the full benefit of his argument that § 2401(a) applies, we still conclude that Capote's motion was time-barred.

As to Capote's equitable tolling argument, we have not, to date, applied the equitable tolling doctrine to § 983 or § 2401(a) cases. However, we have held that, absent Congressional intent to the contrary, principles of equitable tolling are read into every federal statute of limitation. Cook v. Deltona Corp., 753 F.2d 1552, 1562 (1985). Assuming that § 983(e)(3)'s statute of limitations may be equitably tolled, the doctrine of "equitable tolling" is an extraordinary remedy that we apply "sparingly." See, e.g., Drew v. Dep't of Corrs., 297 F.3d 1278, 1286 (11th Cir. 2002) (noting that equitable tolling is available to toll the statute of limitations for filing 28 U.S.C. § 2254 habeas petitions). "[I]t is 'appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.'" Id. (citation omitted and emphasis in original). The burden of establishing entitlement to this "extraordinary remedy"

9

is clearly with Capote.  Id.

While Capote argues that his failure to file an earlier motion was due to the government's negligence in failing to provide him notice, this argument is meritless.  Capote became aware of the forfeiture at the latest in October 1992, when he filed a motion to suppress all evidence seized from his residence.  Despite that knowledge, Capote never filed a motion to have his property returned, but instead waited more than 12 years to challenge the forfeiture, and, therefore, failed to exercise any diligence.  Accordingly, Capote was not entitled to equitable tolling of either statute of limitations.

Lastly, to the extent that Capote argues that the district court's application of § 983(e)'s five-year statute of limitations caused an ex post facto violation, he did not raise this challenge in the district court, and we will review only for plain error. United States v. Miranda, 197 F.3d 1357, 1358-59 (11th Cir. 1999).  "An appellate court may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights." United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir.), cert. denied 125 S.Ct. 2935 (2005)  (quotation and citation omitted).  "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of

10

judicial proceedings." Id.

The Ex Post Facto Clause of the Constitution provides that "No Bill of Attainder or ex post facto Law shall be passed." U.S. Const. Art. I § 9, cl. 3. "The Ex Post Facto Clause operates not to protect an individual's right to less punishment, but rather as a means of assuring that an individual will receive fair warning of criminal statutes and the punishments they carry." United States v. Bordon, 421 F.3d 1202, 1207 (11th Cir. 2005). "[I]n order to prevail on an ex post facto claim, a defendant 'must show both that the law he challenges operates retroactively (that it applies to conduct completed before its enactment) and that it raises the penalty from whatever the law provided when he acted.'" Id. Assuming that § 983 applies retroactively to forfeitures occurring before the date of its passage, nothing in § 983 operates to raise the penalty for a crime that Capote committed. See also Dufresne v. Baer, 744 F.2d 1543, 1546 (11th Cir. 1984) ("[a] law which is merely procedural and does not add to the quantum of punishment, however, cannot violate the ex post facto clause even if it is applied retrospectively."). Thus, we conclude that there was no ex post facto violation in this case.

Based on the foregoing discussion, we conclude that Capote's motion was time-barred under either § 983's five-year statute of limitations or § 2401(a)'s

11

six-year statute of limitations, and that application of § 983(e)(3) did not result in an <u>ex post facto</u> violation.  Accordingly, we conclude that the district court did not commit any reversible error by denying Capote's motion.  We, therefore, affirm.

**AFFIRMED.**