**UNITED STATES of America**

v.

**Jose Fernando CARDONA, Defendant.**

**No. S 89 Cr. 305 (PKL).**

United States District Court,
S.D. New York.

Sept. 22, 1995.

Jose Fernando Cardona, pro se.

Christine E. Gray, Otto G. Obermaier, United States Attorney for the S.D.N.Y., New York City, for U.S.

### *MEMORANDUM ORDER*

LEISURE, District Judge:

Pursuant to Federal Rule of Criminal Procedure 41(e), defendant Jose Fernando Cardona ("Cardona"), *pro se,* originally moved this Court on June 28, 1993 to compel the return of various items of personal property allegedly seized by the Drug Enforcement Agency ("DEA") during a search of his apartment on April 7, 1989. In response to a letter from this Court dated June 6, 1995, the Government, on August 25, 1995, supplied the Court with various affidavits and exhibits opposing Cardona's original motion. Cardona then filed the instant motion on September 14, 1995. This motion restates the claims made in his original motion. In addition, the motion contains, as an alternative to the return of his property, an offer to settle Cardona's claim against the Government for

$20,000. *See* Attachment to Defendant's Motion to Compel the Return of Property. For the reasons stated below, the Court DENIES Cardona's motion to compel the return of his personal property.

## BACKGROUND

On April 7, 1989 Dean Kiernan ("Kiernan") and two other DEA Special Agents obtained Cardona's consent to conduct a search of his apartment at 424 Senator Street, Apartment 13, Brooklyn, New York. *See* Affidavit of DEA Special Agent Dean Kiernan ("Kiernan Aff."), at ¶ 2. The goal of the search was to locate any drug-related items, including records related to drug transactions. Special Agent Kiernan completed a DEA-6 Report, signed and dated by him on April 7, 1989, which set forth a complete inventory of all items seized by the DEA Agents from Cardona's apartment on that same day. *See* Kiernan Aff., at Exhibit A. The DEA-6 Report form filled out by Kiernan contained the proper case title and case number, provided a precise chain of custody, and identified where the property was to be stored. *Id.* The items recorded as taken into custody included various papers, a wallet, two rolls of film, telephone books, etc. There is no mention in the DEA-6 Report of any items that Cardona alleges were seized.

Within several months after the search, two separate discovery letters were sent from the Government to all defense counsel in the case. *See* Affidavit of Assistant United States Attorney Sharon L. McCarthy ("McCarthy Aff"), at ¶¶ 3, 4, Exhibits 1, 2. The first letter, dated June 16, 1989, refers to "the documents seized from 424 Senator Street, Apartment 13", *see id.*, at Exhibit 1, while the second letter stated that duplicates of the documents seized were available to defense counsel upon request. *See id.* at Exhibit 2. There is no mention in either of the letters that any other items had been seized.

Cardona provides no evidence that either he or his counsel inquired about any missing personal property before his original motion for return of property was filed on June 28, 1993. In his memorandum of law supporting that motion, Cardona listed nearly fifty items which he alleged were stolen during the April 7, 1989 search. Items in the list include a washing machine, a meat grinder, an electric polishing machine, a television, and a sofa bed. *See* Defendant's Original Memorandum of Law, at 2–3.

Another Government affidavit, sworn by DEA Special Agent Todd D. Chalk ("Chalk"), states that in or about December of 1994, he learned from the Assistant United States Attorney in charge of the case that all appeals had been closed on the matter. *See Aff.* of Special Agent Todd D. Chalk ("Chalk Aff."), at ¶ 3. Therefore, all the non-drug evidence in the case, including the items of property seized during the April 7, 1989 search, was eligible to be destroyed. *Id.* On or about January 3, 1995, Chalk completed DEA-48a Forms, which regulate the disposition of non-drug evidence. *See* Chalk Aff., at Exhibit A. In completing the DEA-48a forms, Chalk referred to the Acquisition of Non-Drug Property and Regulatory Seizures Reports ("Acquisition Reports"). *See id.*, at Exhibit B. Acquisition Reports are filed throughout an investigation as items of evidence are acquired. *Id.* at ¶ 4. None of the items Cardona seeks to recover in this motion were listed in either the Acquisition Reports or the DEA-48a Forms.

## DISCUSSION

Because Cardona's Rule 41(e) motion for the return of his personal property was made after the termination of criminal proceedings against him, it is treated as a civil complaint for equitable relief. *See Toure v. United States*, 24 F.3d 444, 445 (2d Cir.1994) (complaint seeking the return of seized property after the conclusion of the underlying criminal case is properly treated as commencing a civil action pursuant to 28 U.S.C. § 1346, rather than a motion pursuant to Rule 41(e)); *Rufu v. United States*, 20 F.3d 63, 65 (2d Cir.1994); *Mora v. United States*, 955 F.2d 156, 160 (2d Cir.1992). This Court's jurisdiction over the underlying criminal proceeding establishes jurisdiction over this proceeding. *See Rufu*, 20 F.3d at 65 (district court where defendant is tried has ancillary jurisdiction to decide defendant's post-trial motion for return of seized proper-

804

ty); *Soviero v. United States,* 967 F.2d 791 (2d Cir.1992). Since Cardona is proceeding *pro se,* this Court is obligated to construe his pleadings and papers liberally, *Onwubiko v. United States,* 969 F.2d 1392, 1397 (2d Cir. 1992), to determine whether he can prove "any set of facts in support of his claim which would entitle him to relief." *Haines v. Kerner,* 404 U.S. 519, 521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972). Even under this lower standard, however, Cardona fails to prove any entitlement to the property.

The DEA is obligated to keep records of the property it seizes and stores. Department of Justice Regulations provide:

> Each bureau shall ... maintain[ ] inventory records of its seized personal property to ensure that:
>
>> (a) The date the property was seized is recorded;
>>
>> (b) All of the property associated with a case is recorded together under the case name and number;
>>
>> (c) The location of storage of the property is recorded;
>>
>> (d) A well documented chain of custody is kept;
>>
>> (e) All information in the inventory records is accurate and current.

41 C.F.R. § 128–50.101. *See Rufu,* 20 F.3d at 63. In prior cases, the Second Circuit has reversed district court denials of motions to compel the return of seized property when the Government did not comply with its own requirements.

■ In *Mora,* for example, the Government seized articles of personal property from the defendant after his arrest. After his requests for return of the property went unanswered, the defendant filed a Rule 41(e) motion. In response to the motion, the Government did not supply any admissible evidence to identify the location of the property. Rather, the Government simply submitted a letter to the Court stating that DEA agents had reported to the Assistant United States Attorney in charge of the case that the property was no longer in the possession of the Government. The Second Circuit reversed the District Court's denial of the defendant's motion for return of property. "The govern-

ment failed to offer any evidence concerning the disposition of Mora's property. No receipts, log entries or other documentation—not even an affidavit—were presented." *Mora,* 955 F.2d at 158. Employing similar logic, the *Rufu* Court also reversed a district court's denial of a defendant's Rule 41(e) motion, stating that there was insufficient evidence for the district court to conclude that the Government actually returned all of the property to the defendant. Referring to the Department of Justice regulations cited above, the *Rufu* Court said:

> With these records at hand, it should be a simple matter for the Government to establish on remand what property was seized from Rufu and how that property was disposed of. Indeed the Government contends that "DEA records indicate that the property returned to Rufu's representative was the same property that had been seized from Rufu at the time of his arrest." Such records were not submitted to the district court, however.

*Rufu,* 20 F.3d at 65. Clearly, the Government, in order to defeat a motion for the return of seized property, must provide some evidentiary proof accounting for the property seized.

■ The instant case is obviously distinguishable from both *Rufu* and *Mora.* While the Government did not supply a memorandum of law to support its opposition to Cardona's motion, it did supply ample evidence documenting which items of personal property were removed from Cardona's apartment. The affidavit of Kiernan, and the accompanying document which supports it, prove with clarity: (1) the identification of the property seized; (2) the date of its seizure; (3) the case name and number to which the property relates; (4) the storage location of the property; and (5) the chain of custody of the property. *See* Kiernan Aff., at Exhibit A; 41 C.F.R. § 128–50.101(a–d). The affidavit of Chalk, and the accompanying documents which support it, identify all the items originally seized from Cardona's apartment. *See* Chalk Aff., at Exhibit A, B. This proves that the information in the DEA–6 Report was current and accurate. *See* 41 C.F.R. § 128–50.101(e). While the Government should

have responded to Cardona's original motion before destroying the property actually seized from Cardona, no harm was caused by its failure to do so.

Finally, the Court notes that Cardona supplied no evidence at all for his claim that nearly fifty items of personal property, many of which were quite large, were taken by the DEA during its search. Surely, assuming the truth of his allegations, Cardona should have been able to provide some evidence of the unlawful conduct he attributes to the DEA.

For the reasons stated above, Cardona's motion to compel the return of property is denied.

SO ORDERED