**Hipolito PIMENTEL Plaintiff,**

v.

**UNITED STATES DRUG ENFORCE-MENT ADMINISTRATION, Defendant.**

No. 96Civ.9021(PKL).

United States District Court, S.D. New York.

June 7, 2000.

Hipolito Pimentel, Oakdale, LA, pro se.

Mary Jo White, U.S. Atty., Sara Thomas, of counsel, New York City, for Defendant.

### OPINION AND ORDER

LEISURE, District Judge.

Plaintiff *pro se* Hipolito Uvidalis Pimentel seeks the return of property allegedly seized by defendant United States Drug Enforcement Administration (the "DEA"). Both parties have moved for summary judgment. For the reasons that follow, each motion is granted in part and denied in part.

### BACKGROUND

Plaintiff, his wife Wanda, and their two children resided at 2752 East 66th Street, Brooklyn, New York, between 1987 and 1991. *See* Pimentel Dep. at 12–13, 19–20. From 1987 to 1990, plaintiff worked as a freelance limousine driver, using his Lincoln Towncar to transport passengers between his Brooklyn neighborhood and flights to and from Puerto Rico and the Dominican Republic. *See id.* at 21–22.

In January 1990, DEA special agents investigating plaintiff's alleged participation in a narcotics trafficking scheme began surveillance of his residence. Based on information from a confidential informant, on January 18, 1990, the Honorable Carol Bagley Amon, United States Magistrate Judge for the United States District Court for the Eastern District of New York, issued a warrant authorizing the search of plaintiff's home. *See* Search Warrant, dated Jan. 18, 1990 (attached as Exh. A. to Letter from Sarah Thomas, Esq. to the Court, dated July 20, 1999 (the "Thomas letter")). The warrant authorized the seizure of, *inter alia*, heroin, narcotics paraphernalia, money, narcotics, financial records, "and any other property, documents, or things that constitute direct evidence of the commission of, or are designed or intended as a means of the violation of, or are contraband or the fruit of the violation of the federal narcotics laws." *Id.*

The next day, January 19, 1990, approximately ten special agents assigned to DEA Group 23 executed the search warrant. *See* Rubinstein Decl. ¶ 4; Pimentel Dep. at 28. Although plaintiff was not present when the DEA agents first arrived, the agents located him on 56th Avenue in Brooklyn and brought him to his home for questioning. *See* Pimentel Dep. at 28–29; Rubinstein Decl., Exh. A. Following the interview, plaintiff and his wife were arrested and transported to a nearby police station, where they were finger-printed, photographed, and placed in a cell. *See id.*

While plaintiff and his wife were incarcerated, DEA agents continued to search their residence and confiscated various articles of property. The Report of Investigation, DEA Form 6, prepared by Special Agent Kenneth J. Dinino, lists the following seized property: three automobiles (a 1989 Jeep Cherokee, a 1988 Lincoln Town Car, and a 1975 Mercedes Benz), a cardboard box containing .9 mm and .357 caliber ammunition, photographs of plaintiff and other people, a brown letter wallet with miscellaneous business cards, three telephone and address books, and miscellaneous papers and identification documents belonging plaintiff, including his Florida driver's license, Social Security card, Resident Alien card, Selective Service Certificate, Dominican registration voting card, and automobile registration and insurance cards. *See* Rubinstein Decl., Exh. A. All of the aforementioned property was stored by the DEA's New York Field Division. *See id.* ¶ 7.

At approximately 4:00 p.m. that same day, plaintiff and his wife were released from custody and returned to their home. *See* Pimentel Dep. at 28. Evidently, the Assistant United States Attorney responsible for their case had declined to prosecute them based on the results of the search. When plaintiff returned home, however, he allegedly discovered that the DEA agents had taken additional property not listed in the Report of Investigation. Specifically, he claims that the agents seized "Assorted Jewelry, including Gold rings, watches, bracelets, and necklaces ... [m]ost ... of which contained diamonds," wedding video tapes, his pre-nuptial agreement, and a wedding album. *See* Compl. ¶ 10(1)-(4), 15(4)-(7); Pimentel Dep. at 28–29. He also attests that the agents did not provide him with an inventory report of the items that they confiscated. *See* Pl. Traverse at 3; Pimentel Dep. at 31. Several days later, plaintiff hired an attorney in an attempt to retrieve what was taken. *See id.* at 30–31. But the attorney reported back to him that the DEA would not return his property. *See id.* at 31.

This was not the end of plaintiff's troubles with law enforcement. In July 1990, the Manhattan North Narcotics Unit of New York Police Department (the "NYPD"), in conjunction with DEA Group 33, initiated a second investigation of plaintiff. *See* Pl. Traverse, Exh. A–3. On May 15, 1991, the NYPD arrested plaintiff and his wife for their participation in a conspiracy to distribute heroin. *See* Thomas Decl. ¶ 5. Plaintiff claims that during the search incident to this arrest, DEA agents seized $2,400 in United States currency. *See* Compl. ¶ 13, 15(16); Pl. Traverse at 4. He and his wife were charged with, and eventually pleaded guilty to, federal charges of conspiracy to distribute narcotics in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). *See* Compl. ¶ 12, 14. On July 7, 1994, plaintiff was sentenced to 120 months imprisonment and five years of supervised release. *See id.* ¶ 14.

Now incarcerated, plaintiff filed the instant action in October 1996. By his Complaint, plaintiff seeks an order directing the DEA to return his property forthwith and asks the Court to grant such other relief that it deems appropriate. *See* Compl. ¶ 20, 22. Although the Complaint itself is undated, an affidavit annexed to it is dated October 10, 1996. *See* Thomas Decl. ¶ 7. The Complaint was stamped "Received" by the *Pro Se* Clerk's Office on October 15, 1996. *See* Compl. at 1. The Clerk of the Court issued a summons on November 29, 1996, and the Complaint was subsequently served. *See* Thomas Decl. ¶ 7.

On May 14, 1999, the DEA moved for summary judgment on various grounds, depending on the particular article allegedly seized. In response to the motion, plaintiff served and filed a traverse, in which he opposed the DEA's motion, asserting the existence of genuine issues of material fact. *See* Pl. Traverse at 1, 27–28. Alternatively, plaintiff requested that the Court grant summary judgment in his favor and order the DEA to release the

seized property or compensate him with its full and fair market value. *See id.*

## DISCUSSION

### I. Standard for Summary Judgment

A moving party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 128 (2d Cir.1996). The burden is on the moving party to demonstrate that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Gallo v. Prudential Residential Servs. L.P.,* 22 F.3d 1219, 1223–24 (2d Cir.1994). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995).

In deciding a motion for summary judgment, the Court's function is not to try issues of fact, but instead to determine whether there remain any such issues to try. *See Sutera v. Schering Corp.,* 73 F.3d 13, 15–16 (2d Cir.1995). In doing so, the Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Holt,* 95 F.3d at 129. However, the substantive law governing the case will identify those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

"A 'genuine' dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *Dister v. Continental Group,* 859 F.2d 1108, 1112 (2d Cir.1988) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). Thus, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Mere speculation or conjecture" will not suffice, *Western World Ins. Co. v. Stack Oil Inc.,* 922 F.2d 118, 121 (2d Cir.1990), nor will "reliance on unsupported assertions," *Goenaga,* 51 F.3d at 18. Rather, the nonmoving party must provide "concrete evidence from which a reasonable juror could return a verdict in [her] favor." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505.

In this case, both parties seek summary judgment. When faced with cross-motions for summary judgment, the Court is not obligated to grant summary judgment for one side or the other. *See Association of Int'l Auto. Mfrs., Inc. v. Abrams,* 84 F.3d 602, 611 (2d Cir.1996); *Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir.1993). "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Schwabenbauer v. Board of Educ.,* 667 F.2d 305, 314 (2d Cir.1981).

Finally, a *pro se* plaintiff is entitled to have his or her pleadings held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam); *see also Hogarth v. New York City Health & Hosps. Corp.,* No. 97 Civ. 0625, 2000 WL 375242, *3 (S.D.N.Y. Apr. 12, 2000). As such, the pleadings of a *pro se* plaintiff must be read liberally and interpreted "to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d

Cir.1994). Nonetheless, the fact that plaintiff is proceeding *pro se* does not otherwise relieve him from the usual requirements of summary judgment. *See Adams v. New Jersey Transit Rail Operations,* No. 97 Civ. 430, 2000 WL 224107, at *7 (S.D.N.Y. Feb. 28, 2000); *see also Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991).

## II. Defendant's Summary Judgment Motion

Plaintiff's Complaint is self-styled a "Petition for Return of Personal Property Pursuant to Civil Equitable Proceeding or Rule 41(e) of the Federal Rule[s] of Civil Procedure." Compl. at 1. The Complaint seeks the return of the following items:

1. 1989 Black Jeep Cherokee 2–door
2. 1988 White Lincoln Town Car
3. 1975 Black Mercedes Benz 2–door
4. Assorted Jewelry (Gold rings, watches, bracelets and necklaces—most of jewelry with diamonds)
5. Wedding Video Tapes
6. Pre–Nuptial Agreement
7. Wedding Album
8. Assorted Photographs
9. Miscellaneous Business cards and Men's Brown Leather wallet
10. Florida Driver's License
11. Social Security Card
12. Resident Alien Registration Card
13. Slective Service Certificate
14. Doinican Registration Voting Card
15. Misellaneous Papers, Insurance and Registration Cards
16. Cash $2,400.00 in U.S. currency

*See id.* ¶ 15.

■ Where, as here, criminal proceedings are no longer pending, a prisoner's petition for the return of seized property must be treated as a civil equitable proceeding, even if characterized as being made pursuant to Fed. R. Crim P. 41(e). *See Soviero v. United States,* 967 F.2d 791, 792–93 (2d Cir.1992); *Mora v. United States,* 955 F.2d 156, 158 (2d Cir.1992). In addition, so long as the Court has jurisdiction over a complaint seeking equitable relief, it also "has authority to award whatever damages are incident to the complaint." *Soviero,* 967 F.2d at 793.

In its motion for summary judgment, the DEA identified various deficiencies with plaintiff's claims. Because it was filed first, the Court will address the merits of the DEA's motion before turning its attention to plaintiff's cross-motion.

## A. Plaintiff's Personalty

On August 5, 1998, pursuant to a signed authorization from plaintiff, the DEA returned various items of plaintiff's personal property, excluding the ammunition, to plaintiff's brother, Leiden Osiris Pimental. *See* Rubinstein Decl. ¶ 10 & Exhs. B–D. Among those items were plaintiff's wedding video, photographs, wallet, business cards, antenuptial agreement, phone and address books, and other miscellaneous government identification documents. *See id.* Exhs. C–D. Plaintiff does not deny that the DEA returned these articles; as such, there no longer exists any dispute as to their possession. Insofar as plaintiff's Complaint seeks the return of the aforementioned property, such claims (specifically, claims to items 5 through 15) shall be dismissed as moot. *See Kerrigan v. Boucher,* 450 F.2d 487, 489 (2d Cir.1971) (dismissing action as moot where defendant had returned plaintiff's property and "plaintiff's claim for damages was conceded to be 'nominal' "); *Truth Seeker Co. v. Durning,* 147 F.2d 54, 57 (2d Cir.1945); *United States v. Moloney,* 985 F.Supp. 358, 359 n. 2 (W.D.N.Y.1997); *United States v. Moussa,* No. 91 Cr. 1261, 1993 WL 42179, at *1 (E.D.N.Y. Feb. 10, 1993).

## B. The Three Automobiles

### 1. Administrative Forfeiture

21 U.S.C. § 881(a)(6) authorizes the civil forfeiture of property deemed to be the proceeds of narcotics transactions. *See Boero v. DEA,* 111 F.3d 301, 304 (2d Cir.1997); *Torres v. $36,256.80 U.S. Currency,* 25 F.3d 1154, 1155 (2d Cir.1994). For property valued at $500,000 or less, the DEA may follow an administrative forfeiture process that is governed by the

customs laws. *See* 19 U.S.C. § 1607; 21 U.S.C. § 881(d); *Boero*, 111 F.3d at 304.

The DEA contends that this Court lacks subject matter jurisdiction over plaintiff's claims to the three automobiles because the vehicles were forfeited to the Government via the proper administrative procedure. *See* Def. Mem. at 9–17. On January 19, 1990—the day of the search and seizure—the DEA initiated administrative forfeiture proceedings against the three automobiles. *See* Hieronymus Decl. ¶¶ 5(a), 6(a), 7(a). Forfeiture reports were subsequently prepared and submitted for review by the DEA's Office of the Chief Counsel, Asset Forfeiture Section, to determine whether there was adequate information to support administrative forfeiture proceedings against the property. *See id.* With respect to each automobile, the Office decided to accept the case for administrative forfeiture. *See id.*

Under 19 U.S.C. § 1607(a), the Government is required to send "[w]ritten notice of seizure together with information on the applicable procedures ... to each party who appears to have an interest in the seized article." *See Ikelionwu v. United States*, 150 F.3d 233, 237 (2d Cir.1998); *Boero*, 111 F.3d at 304. On February 13, 16, and 18, 1990, the DEA sent written notices of the seizures of the Mercedes, Jeep, and Lincoln, respectively, by certified mail, return receipt requested, to Uridalis Pimental, at 2752 East 66th Street, Brooklyn, New York, 11204. *See id.* ¶¶ 7(b), 6(b), 5(b). With regard to the Mercedes and the Jeep, notices were also sent, by certified mail, return receipt requested, to plaintiff's brother, Osiris Pimentel, the registered owner of both vehicles, at 1334 Riverside Drive, New York, N.Y. 10033. *See id.* ¶¶ 7(c), 6(c). As required by 21 C.F.R. § 1316.75, the DEA published notice of seizure for each vehicle in the *USA Today* for three successive

weeks. *See id.* ¶¶ 7(d), 6(d), 5(c) & Exh. 2.[1]

Federal law provides that any person claiming an interest in seized property may commence judicial forfeiture proceedings by filing a claim of ownership and a cost bond with the DEA within twenty days of receipt or publication of the relevant seizure notice. *See* 19 U.S.C. § 1608; 21 C.F.R. § 1316.77. In plaintiff's case, both the mailed and published notices explained his option of either filing a claim and cost bond (or an affidavit of indigency in lieu of a cost bond) to contest the forfeiture in District Court or filing a petition with the DEA, pursuant to 19 U.S.C. § 1618 and 21 C.F.R. §§ 1316.79–.80, for remission or mitigation. *See* Hieronymus Decl. ¶¶ 7(d), 6(d), 5(c) & Exh. 2. Plaintiff did neither. Accordingly, having received no claims, and the respective twenty-day periods having expired, the DEA declared the Mercedes forfeited on March 30, 1990, *see id.* ¶ 7(e) & Exh. 11, and did the same for the Lincoln and the Jeep on April 5, 1990. *See* 19 U.S.C. § 1609; 21 U.S.C. § 881(d); 21 C.F.R. § 1316.77; Hieronymus Decl. ¶¶ 5(d), 6(e) & Exhs. 3, 5.

## 2. Statute of Limitations

 An action seeking to correct a procedurally deficient forfeiture is subject to the six-year catch-all statute of limitations for federal claims. *See* 28 U.S.C. § 2401(a); *Adames v. United States*, 171 F.3d 728, 731 (2d Cir.1999); *Polanco v. DEA*, 158 F.3d 647, 652–53 (2d Cir.1998); *Boero*, 111 F.3d at 305 n. 5. Because § 2401(a) is jurisdictional in nature, if plaintiff has failed to satisfy its requirements, the Court must dismiss the action for lack of subject matter jurisdiction. *See In re Agent Orange Prod., Liability Litig.*, 818 F.2d 210, 214 (2d Cir.1987).

---

1. Notices of the seizure of the Mercedes were published on February 21, February 28, and March 7, 1990, and stated that the last day to file a claim for the automobile was March 13, 1990. *See* Hieronymus Decl. ¶ 7(d). The no- tices for the Jeep and the Lincoln were published on February 28, March 7, and March 14, 1990, and set a deadline of March 20, 1990 for the filing of a timely claim. *See id.* ¶¶ 5(c), 6(d).

Plaintiff maintains the Government's seizure notices were constitutionally defective, and thus implies that his claims did not accrue in the absence of adequate notice. *See* Pl. Traverse at 23; Compl. ¶ 16. Specifically, he notes that the DEA's seizure notices were sent to the wrong address, as the DEA mistakenly used an incorrect postal zip code despite having seized his driver's license, which supposedly contained his correct address. *See* Pl. Traverse at 7. Presumably due to this error, plaintiff claims never to have received any of the three forfeiture notices. *See* Pimentel Dep. at 34–36.[2]

The Second Circuit has held that a claimant's cause of action accrues "when he discovered or had reason to discover that his property had been forfeited without sufficient notice." *Polanco*, 158 F.3d at 654 (citing *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993)). Consequently, the statute of limitations begins to run "at the earliest of the following dates: at the close of the forfeiture proceedings, however

soon after the seizure; or if no forfeiture proceedings were conducted, at the end of the five-year limitations period during which the government is permitted to bring a forfeiture action." *Id.* (citations omitted). Here, the DEA conducted forfeiture proceedings for all three vehicles. *See supra* at 425. Therefore, any claim to the Mercedes accrued on March 30, 1990, while the limitations period with regard to the Jeep and Lincoln commenced on April 5, 1990.[3] *See id.* at 425.

Plaintiff's complaint was filed, at the earliest, on October 10, 1996—over six months after the expiration of the limitations period. *See id.* at 422–23. Furthermore, in his deposition, plaintiff admitted that from January 19, 1990, when the automobiles were seized, until the date he filed this lawsuit, he made no formal request for the return of the property. *See* Pimentel Dep. at 62–63. Hence, because plaintiff failed to assert his rights for over six years, his claims are now time-barred.

---

2. It should be noted that even if a letter contains an incorrect zip code, the Postal Service will deliver the letter that to the correct street address. *See E & H Partners v. Broadway Nat'l Bank*, 39 F.Supp.2d 275, 281–82 (S.D.N.Y.1998); *In re STN Enters., Inc.*, 94 B.R. 329, 334 (Bankr.D.Vt.1988) (finding presumption that notice was received despite containing a zip code which was only off by one digit); Finneran Decl. ¶ 2; *see also Peters v. National R.R. Passenger Corp.*, 966 F.2d 1483, 1487 (D.C.Cir.1992) ("While a zip code undoubtedly adds to the preciseness of an address, we doubt that it use would remain voluntary if its omission rendered the mail not reasonably calculated to reach its destination."); *Perez v. United States*, No. 89 Cr. 800, 96 Civ. 7702, 1998 WL 352592, at *2 (S.D.N.Y. June 26, 1998) (holding that omission of a zip code does not render notice ineffective).

3. In *Adames*, the Second Circuit observed that the statements by the *Polanco* panel were difficult to reconcile. *See Adames*, 171 F.3d at 731. Specifically, it found the Court's prior conclusion that a cause of action would not accrue until the claimant "discovered or had reason to discover that his property had been forfeited without notice" inconsistent with its holding that the limitations period could be-

gin "at the close of the forfeiture proceedings." *Id.* at 731–32 (quoting *Polanco*, 158 F.3d at 654). The *Adames* Court suggested that "[i]t is conceivable that the *Polanco* court meant that the conclusion of the forfeiture proceedings could, by itself, charge the claimant with the knowledge ordinarily necessary to effectuate accrual." *Id.* at 732. Yet, it also recognized the possibility that the panel "believed that the initial seizure would put some or all claimants on inquiry notice of the ultimate disposition of their property—including forfeiture." *Id.*

This ambiguity is irrelevant to the instant action, however, since, unlike the situation in *Adames*, there is no question that plaintiff was aware that his property had been seized. *See* Pimentel Dep. at 28–30; Pl. Traverse at 4. In fact, plaintiff admits that he witnessed the DEA agents driving the cars away from his home on January 19, 1990. *See* Pimentel Dep. at 29–30. Although his claim did not accrue until the date the property was administratively forfeited, plaintiff's knowledge of the initial seizure gave him reason to know that forfeiture proceedings were imminent. Thus, he clearly would have had "reason to discover that his property had been forfeited without notice" upon termination of the forfeiture proceedings.

Plaintiff charges that the Government knew he was contesting the forfeiture and that therefore strict adherence to the six-year statute of limitations should be excused. *See* Pl. Traverse at 23–24. For this proposition he cites the Second Circuit's statement that "technical non-compliance with procedural rules governing the filing of forfeiture claims will be excused where there is a sufficient showing of interest in the property," *United States v. One 1987 Jeep Wrangler Auto.,* 972 F.2d 472, 480–81 (2d Cir.1992). Because his attorney inquired about the status of the property, plaintiff maintains, the DEA should have been on notice that he was contesting the seizure and subsequent forfeiture.

Notwithstanding plaintiff's artful argument, his case is not at all comparable to the diligence displayed by the claimant in the *Jeep Wrangler* litigation. There, the claimant filed his claim to the seized vehicle prior to receiving the DEA's Notice of Seizure, which was not sent until three months after the physical seizure. *See id.* at 481. The Court found that his premature filing was not merely permissible, but in fact was "warranted in light of ... the inaction of the Government." *Id.* By contrast, in the instant action, plaintiff hired counsel several days after the seizure in an attempt to seek "immediate release of the 'seized' property." Pl. Traverse at 10; *see also id.* at 24; Pimentel Dep. at 30–31. Yet, despite having access to counsel and knowledge of exactly what property the Government seized, plaintiff took no formal action to commence administrative or

judicial proceedings until September 1996. There is thus no excuse for his having waited over six years to pursue his claims.[4]

### 3. Equitable Tolling

Finally, plaintiff advances an argument that can be construed as a request that the Court save his claims under the doctrine of equitable tolling. Plaintiff submits that beginning on July 3, 1995,[5] prior to the expiration of the six-year limitations period, he contacted the United States Attorneys' Office and the DEA "in an attempt to obtain information(s) pertaining to the seizure." Pl. Traverse at 24; *see also id.,* Exhs. C–1 through C–6. In a letter dated August 11, 1995, a paralegal specialist in the Department of Justice's Office of Information and Privacy acknowledged receipt of plaintiff's request, characterizing it as a "pending appeal." *Id.,* Exh. C–4. Despite his many inquiries, the Government did not release the requested information until September 16, 1996. *See id.,* Exh. A–4(a). The Court understands plaintiff's demonstration of his diligence to be a request that the statute of limitations be tolled for this fourteen-month interval.

The doctrine of equitable tolling "allows a district court to toll the statute of limitations where, *inter alia,* a plaintiff initially 'asserted his rights in the wrong forum.'" *Polanco,* 158 F.3d at 655 (quoting *Johnson v. Nyack Hosp.,* 86 F.3d 8, 12 (2d Cir.1996)). "To avail himself of this doctrine, the plaintiff must show that he 'pass[ed] with reasonable diligence through the period [he] seeks to have tolled.'" *Id.*

4. Plaintiff's efforts to retrieve his property are also distinguishable from the dilgence displayed by the claimant in *Ramirez v. United States,* 767 F.Supp. 1563, 1570 (M.D.Fla. 1991), which plaintiff also cited, *see* Pl. Traverse at 23. In that case, the Customs Service declared plaintiff's boat forfeited and sold the vessel, despite having received plaintiff's properly-filed claim. *See Ramirez,* 767 F.Supp. at 1570. Obviously, there is a tremendous difference between a letter claiming an interest in the property and requesting a waiver of the bond requirement, *see id.* at 1567, and a brief conversation between an

attorney and a DEA agent inquiring about the status of seized property, *see supra* at 422–23. Moreover, plaintiff has failed to submit any affirmative evidence that such a conversation ever actually occurred, let alone any detail as to what was said. For these reasons, there is no reason to charge the DEA with actual notice that plaintiff was formally contesting the seizure.

5. A close inspection of the documents reveals that such efforts actually commenced on June 21, 1995. *See* Pl. Traverse, Exh. C–1.

(alteration in original). Thus, the statute of limitations may be tolled if the claimant originally filed his action in the wrong court or in other limited situations. *See id.* Nonetheless, "[f]ederal courts have typically extended equitable relief only sparingly ... [and] have generally been much less forgiving in receiving late filings where claimant failed to exercise due diligence in preserving his legal rights." *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990); *see also Johnson,* 86 F.3d at 12 (suggesting that the Second Circuit has "applied the doctrine 'as a matter of fairness' where a plaintiff has been 'prevented in some extraordinary way from exercising his rights, or h[as] asserted his rights in the wrong forum' ") (quoting *Miller v. International Tel. & Tel. Corp.,* 755 F.2d 20, 24 (2d Cir.1985)) (alteration in original).

This is certainly not an instance that calls for equitable tolling. "Once it appears that the statute of limitations has run, the plaintiff must sustain the burden of showing not merely that he failed to discover his cause of action prior to the running of the statute of limitations, but also that he exercised due diligence and that some affirmative act of fraudulent concealment frustrated discovery notwithstanding such diligence." *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 461 (2d Cir.1974); *cf. Irwin,* 498 U.S. at 96, 111 S.Ct. 453 (noting that equitable tolling is appropriate "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass"). First, plaintiff should have discovered that he had some sort of legal claim the moment his property was physically seized. As evidence by his retainer of counsel, he did not need the documentation he ultimately received from the Government to alert him that the automobiles

had been taken. *See Torre v. Columbia Univ.,* No. 97 Civ. 0981, 1998 WL 386438, at *7 (S.D.N.Y. July 10, 1998) ("[E]quitable tolling is intended to provide relief where a plaintiff is not aware of the existence of a cause of action, not where a plaintiff is aware of the cause of action but believes that [he] may not have sufficient evidence to prove [his] case."); *Asbedian v. New York City Human Resources Admin.,* 2 F.Supp.2d 397, 399 (S.D.N.Y.1998) (refusing to toll limitations period for five months during which plaintiff "was trying to gather information to substantiate his claim"). Second, regardless of whether plaintiff exercised due diligence in discovering that the cars had been formally forfeited, there is no evidence whatsoever to suggest "some affirmative act of fraudulent concealment" on the part of the Government. To be sure, a fourteen month lag in processing a request for paperwork may seem excessive. Nevertheless, the Court is unwilling, in the absence of concrete evidence, to equate bureaucratic delay with fraud.

In sum, given "the absence of any affirmative action on the part of [plaintiff] to preserve [his] right" to the property, the Court has found "no inequitable circumstances warranting a judicial extension of the time limitation under the doctrine of equitable tolling." *Bowers v. Transportacion Maritima Mexicana, S.A.,* 901 F.2d 258, 264 (2d Cir.1990). Consequently, plaintiff's claims for the three automobiles are time-barred, and the Court is without subject matter jurisdiction to hear such claims. As such, any claims with regard to the automobiles must be dismissed.[6]

## C. Currency

Plaintiff also seeks the return of $2,400 in U.S. currency that he claims the DEA

---

**6.** Having ruled that plaintiff's claims to the automobiles are time-barred, the Court need not address plaintiff's contention that the forfeiture notices were constitutionally defective on account of the incorrect zip code. Whether or not the DEA followed the appropriate administrative process, it is now too late for plaintiff to raise these issues for the first time.

The Court notes, however, that despite plaintiff's insistence that the incorrect zip code rendered notice invalid, *see* Pl. Traverse at 7–8, 18–21, the requirements of due process were satisfied "by virtue of [plaintiff's] admitted actual knowledge of the seizure." *Jeep Wrangler,* 972 F.2d at 482.

seized incident to his May 1991 arrest. *See* Pl. Traverse at 4 & Exh. B. There is *no reference, however, to any currency in the relevant DEA Group 33 file.* *See* Rubinstein Decl. ¶ 12. Rather, the DEA has provided a property clerk invoice and a logbook entry showing that the NYPD confiscated $2,400 from plaintiff's residence on that same date.[7] *See* Thomas Decl. ¶ 12 & Exh. F. With the exception of his Presentence Report, *see* Pl. Traverse, Exh. B, which is ambiguous as to which law enforcement agency confiscated the cash, plaintiff has offered nothing to link the DEA to the seized currency. Therefore, as the evidence clearly demonstrates that it was the NYPD, not the DEA, that took the money, any claim against this defendant for its return must also be dismissed.

## D. Assorted Jewelry

■ The disposition of plaintiff's claim with regard to the "assorted jewelry" stands on a different footing than his other claims. In its memorandum of law in support of its motion for summary judgment, dated May 14, 1999, the DEA boldly asserted that "[t]here is . . . no credible evidence that the DEA seized any jewelry . . . either on January 19, 1990 or on May 15, 1991." Def. Mem. at 19. Both the agent responsible for plaintiff's case and the DEA's forfeiture counsel stated unequivocally that none of the DEA's records show that it seized any jewelry from plaintiff's person or residence. *See* Rubinstein Decl. ¶ 11 ("None of the DEA records I have located show that any jewelry was seized from [plaintiff] on January 19, 1990"); *id.* ¶ 12 ("[The DEA Group 33 case] files did not contain any records showing that any jewelry . . . was seized, placed in the evidence vault or disposed of out of the DEA system."); Hieronymus Decl. ¶ 8 ("A thorough search of DEA's Computerized Asset Program fails to reveal a record of the seizure and/or forfeiture of [any jewelry] from [plaintiff].").[8] Moreover, the Government insists that "[t]he documents produced in this case show that the DEA followed its regulations by recording an inventory of all property seized on January 19, 1990 on a Report of Investigation, DEA Form 6." Def. Mem. at 19 (citing Rubinstein Decl. ¶ 6 & Exh. A). Because the inventory report made no mention of any jewelry, the DEA submits, any claim to such property must be dismissed for lack of credible evidence. *See id.* at 20.

Consistent with the DEA's records, plaintiff's July 9, 1999 traverse offers no "concrete evidence" that the DEA actually seized any jewelry. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. However, in his deposition, plaintiff described the jewelry allegedly taken, *see* Pimentel Dep. at 29, 38–48,[9] as well as the agent whom he claims

---

7. Actually, the invoice shows that the NYPD confiscated thirty $50 bills and ninety $20 bills, yet totals the cash value of the seized currency as $2,400. It is impossible for this Court to discern whether the NYPD in fact seized $2400, as plaintiff alleges, or $3300, the properly calculated sum. This inconsistency is irrelevant to the instant motion, however, since regardless of the amount invoiced by the NYPD, there is no evidence of any cash taken by the DEA.

8. The Court is troubled by the Government's failure to submit an affidavit from Special Agent Dinino, the DEA agent responsible for plaintiff's case in 1990. Instead, the Government merely offers an unsworn declaration from Special Agent Jon A. Rubinstein, who has only been responsible for the case since 1996. *See* Rubinstein Decl. ¶ 3. In his declaration, Rubinstein describes what he learned in conversations with Dinino, as well as the former Group 23 supervisor (whom he does not name) and two other unnamed agents supposedly present during the January 19, 1990 search. *See id.* ¶ 11. Of course, such statements are hearsay, and may not be considered in the context of a summary judgment motion. *See H. Sand & Co. v. Airtemp Corp.,* 934 F.2d 450, 454–55 (2d Cir.1991). In light of the Government's later admission that at least one item of jewelry was seized, its attorney's decision not to submit sworn statements from Dinino and the other agents may be revealing in and of itself.

9. Plaintiff described a diamond bracelet, an Indian ring, a gold Guvenia watch, and a gold chain, all of which he claims DEA agents

confiscated it, *see id.* at 40–41. He also notes that the "agents failed to provide [him] with [an] inventory report of seized property as required by regulation and statutory provisions of procedures to be followed by the DEA." Pl. Traverse at 25. The DEA has not denied having failed to provide plaintiff with the report on the day of the seizure. Plaintiff insists that had such an inventory been provided, there would be no dispute as to the articles seized. *See id.*

Ordinarily, plaintiff's bare allegations that the DEA took his property—in contradiction to various documents and sworn affidavits to the contrary—would not suffice to allow his claims to survive summary judgment. *See Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995) ("[A] party may not rest on the bare allegations of a pleading to defeat a properly submitted motion for summary judgment."); *Contemporary Mission, Inc. v. United States Postal Serv.,* 648 F.2d 97, 107 (2d Cir.1981) ("A 'bare assertion' that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient to justify a denial of a motion for summary judgment."). However, on July 20, 1999, Assistant United States Attorney Sarah Thomas advised the Court that "[s]ince filing the motion, the Government has obtained a copy of the search warrant return filed with the United States District Court for the Eastern District of New York. That return lists, among other seized property, a man's gold chain." Thomas Letter at 1. Apparently, the chain to which the search warrant return refers is the eighteen-carat gold chain with a Lincoln Towncar insignia pendant that plaintiff claims to have been wearing when he was first arrested. *See* Pimentel Dep. at 41–42.

In light of this development, the Government withdrew "that portion of the motion for summary judgment that states there is no credible evidence that a gold chain was seized on January 19, 1990." Thomas Letter at 1. Its letter stated, however, that it would continue to seek summary judgment as to the remainder of plaintiff's claims and, in particular, "the other 'miscellaneous' jewelry for which there is no record, other than one gold chain." *Id.*

On August 5, 1999, plaintiff responded to this new information, arguing that the Government's late admission substantiates his prior allegation, undermines the Government's prior denials, and impeaches the credibility of the agents that seized his property. *See* Pl. Response to Government's New Information ("Response"), dated Aug. 5, 1999, at 2. The Court agrees. Viewed most favorably to plaintiff, this new information not only suggests that the DEA did indeed seize a man's gold chain, it also casts considerable doubt on the Government's continued contention that no other jewelry was taken during the seizure. *See Transatlantic Marine Claims Agency, Inc. v. M/V OOCL Inspiration,* 137 F.3d 94, 100 (2d Cir.1998) (suggesting that a party may defeat a motion for summary judgment by "attack[ing] the [movant's] evidence, and cast[ing] enough doubt on it to raise a genuine issue of material fact"). While the Court must "eschew credibility assessments" at the summary judgment stage, *Weyant v. Okst,* 101 F.3d 845, 854 (2d Cir.1996),[10] plaintiff has done more than mount a "general attack[ ] upon the defendant's credibility," *Crawford–El v. Britton,* 523 U.S. 574, 600, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). Plaintiff's response to this new information correctly identifies the issue of the DEA's credibility as a genuine issue of material fact. *See Cross v. United States,* 336 F.2d 431, 433 (2d Cir.1964) ("While we have recently em-

---

seized from his person, as well as a diamond ring and a lady's Guvenia watch that belonged to his wife. *See* Pimentel Dep. at 38–48. He also added: "Maybe my wife has some more jewelry that was missing. That I don't know." *Id.* at 48.

**10.** This is because "[a]ssessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 621 (2d Cir. 1999).

phasized that ordinarily the bare allegations of the pleadings, unsupported by specific evidentiary data, will not alone defeat a motion for summary judgment, this principle does not justify summary relief where, as here, the disputed questions of fact turn exclusively on the credibility of movants' witnesses.") (citation omitted); *see also Arnstein v. Porter,* 154 F.2d 464, 469 (2d Cir.1946) ("It follows that, as credibility is unavoidably involved, a genuine issue of material fact presents itself. With credibility a vital factor, plaintiff is entitled to a trial where the jury can observe the witnesses while testifying."). The inconsistencies between the DEA's records and plaintiff's account of the seizure can only be resolved based upon credibility assessments, which lie within the exclusive province of the jury. *See Reeves v. Johnson Controls World Servs., Inc.,* 140 F.3d 144, 157 (2d Cir.1998); *see also Davidson v. Bennis,* 152 F.3d 917, 1998 WL 391112, at \*1 (2d Cir. May 20, 1998) (finding that disagreement between plaintiff's and defendant's accounts of a search of plaintiff's prison cell "creates a credibility issue, especially in light of other inconsistencies in the record regarding the search," including an incomplete list of items seized, which in turn reveals "a genuine issue of material fact, sufficient to prevent summary judgment").

Had it not been for the Government's candid admission, there might never have been any proof that the gold chain was taken, and the Court may well have mistakenly allowed judgment in the DEA's favor. With this in mind, this Court cannot and will not predict what a more searching inquiry into the DEA's quagmire of documents and impounded property will expose. Hence, on this claim, the Government has failed to satisfy its burden of

demonstrating "that there is no genuine issue as to any material fact." Fed. R.Civ.P. 56(c).[11] Summary judgment must therefore be denied.

## III. Plaintiff's Summary Judgment Motion

By his traverse, plaintiff asks the Court to grant summary judgment in his favor, arguing that "[o]n the merits, the evidence [does] not demonstrate that [plaintiff's] property was illegally acquired, use[d] or intended to be used in any illegal activities and thus, [the] government had no probable cause to seize [the] property." Pl. Traverse at 28. Furthermore, in his response to the recent revelation regarding the gold chain, plaintiff reiterates his assertion the "government's new information without more has proven plaintiff's case; and thus summary judgment should be granted in plaintiff's favor." Pl. Response at 3. Accordingly, the Court will consider plaintiff's request for summary judgment pursuant to Fed.R.Civ.P. 56(a).

 Insofar as plaintiff's cross-motion seeks the return of jewelry other than the one gold chain identified in the search warrant return, plaintiff's motion must be denied. Except for his own self-serving statements, plaintiff has offered no affirmative evidence that DEA agents actually took any other jewelry. While plaintiff has cast sufficient doubt upon the DEA's denials to allow his claims to survive summary judgment, *see supra* at 430–31, when the same evidence is viewed in the light most favorable to the Government, *see Anderson,* 477 U.S. at 255, 106 S.Ct. 2505, it is evident that the issue remains in dispute. Certainly a reasonable jury could disbelieve plaintiff's allegations and find that the DEA's records correctly show that no other jewelry was seized. *See*

---

11. In light of the new evidence, the Court would be amenable to a request, pursuant to Fed.R.Civ.P. 56(f), for an order permitting further discovery to be conducted in these proceedings. The Court is also willing to consider a motion by plaintiff for the appointment of counsel, pursuant to 28 U.S.C. § 1915(e)(1), to assist him in developing and pressing his claims at trial. *See* 28 U.S.C. § 1915(e); *Rufu v. United States,* 20 F.3d 63, 65 (2d Cir.1994); *Onwubiko v. United States,* 969 F.2d 1392, 1399 (2d Cir.1992); *Bautista v. United States,* 813 F.Supp. 187, 188 (E.D.N.Y.1993).

*United States v. Cardona*, 897 F.Supp. 802, 805 (S.D.N.Y.1995) (Leisure, J.) (denying motion to compel the return of seized property where the claimant supplied no evidence that personal items were taken during a DEA search). That both parties have moved for summary judgment does not prevent the Court from concluding, as it now does, that disputed issues of fact still exist. *See Bank of Am. Nat'l Trust & Sav. Ass'n v. Gillaizeau*, 766 F.2d 709, 715 (2d Cir.1985).

The gold chain, however, presents a far more difficult question. Certainly the search warrant return is strong evidence that Government agents did in fact seize the chain, despite the lack of any contemporaneous record in the DEA's files concerning its existence. Furthermore, having withdrawn the portion of its motion that sought dismissal of plaintiff's claim regarding the gold chain, the DEA no longer denies having seized that particular article. Consequently, nowhere in its reply memorandum of law does the DEA explicitly contest plaintiff's cross-motion, with the exception of a footnote in which it disputes plaintiff's contention that, notwithstanding the Government's decision not to prosecute plaintiff following the search, probable cause existed for the seizure. *See* Def. Rep. Mem. at 5 n. 3 ("[T]he sole fact that the United States Attorney declined to prosecute [plaintiff] on a certain date does not mean that there was no probable cause to forfeit the seized property, as the standards for criminal prosecution and civil forfeiture differ greatly."). Hence, in the wake of its admission regarding the gold chain, the DEA is left with its "probable cause" footnote as its sole leg to stand on.

Forfeiture may be had under 21 U.S.C. § 881(a)(6) of "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance [as well as] all proceeds traceable to such an exchange." In order to seize property under § 881(a)(6)

and 19 U.S.C. § 1615, the Government must establish probable cause to connect the property with drug trafficking. *See* 21 U.S.C. § 881(b)(4); *United States v. One Parcel of Property Located at 194 Quaker Farms Rd., Oxford, Conn.*, 85 F.3d 985, 988 (2d Cir.1996); *United States v. Daccarett*, 6 F.3d 37, 50 (2d Cir.1993); *see also United States v. James Daniel Good Real Property*, 510 U.S. 43, 55, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993). The property need not, however, be linked to a specific drug transaction. *See United States v. Banco Cafetero Pan.*, 797 F.2d 1154, 1160 (2d Cir.1986). As the Second Circuit has articulated, "[t]here need not be a substantial connection between the drug activities and the property in question, but only a nexus between them." *United States v. All Right, Title & Interest in Real Property & Appurtenances Thereto Known as 785 St. Nicholas Ave. & 789 St. Nicholas Ave.*, 983 F.2d 396, 403 (2d Cir.1993); *see also Daccarett*, 6 F.3d at 55. Only after the Government has established probable cause for the forfeiture does the burden of proof "shift[ ] to the claimant to demonstrate that the property belongs to him, is not drug money, and is therefore not forfeitable." *Boero*, 111 F.3d at 304; *see also United States v. All Assets of Statewide Auto Parts, Inc.*, 971 F.2d 896, 903 (2d Cir.1992); *United States v. Any & All Radio Station Equip.*, No. 99 Civ. 0637, 2000 WL 342714, at *7 (S.D.N.Y. Mar. 31, 2000). Hence, if the Government cannot demonstrate probable cause, the seized article must be returned to its proper owner.

Plaintiff contends that the Assistant United States Attorney's decision not to prosecute him following the search manifests the Government's lack of probable cause for the seizure. *See* Pl. Traverse at 27. Nevertheless, even "an acquittal in a criminal case does not bar subsequent civil forfeiture actions for the same transaction because the acquittal 'merely proves the existence of a reasonable doubt as to [the defendant's] guilt.'" *Dowling v. United States*, 493 U.S. 342, 359–60, 110 S.Ct. 668,

107 L.Ed.2d 708 (1990) (quoting *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 361, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984)) (alteration in original).[12] Logically, then, just as the Government need not win a conviction in order to proceed with civil forfeiture, it need not take any steps to commence criminal prosecution, so long as it can demonstrate probable cause. *See Jeep Wrangler*, 972 F.2d at 476 ("A forfeiture proceeding may even be commenced where no criminal action is brought."); *Lopes v. United States*, 862 F.Supp. 1178, 1182 n. 5 (S.D.N.Y.1994). The failure to prosecute, therefore, has no effect on the Government's ability to pursue civil forfeiture. Nor can it be viewed as evidence of lack of probable cause.

Nonetheless, although Special Agent Dinino's affidavit in support of the DEA's application for a search warrant clearly demonstrates that the DEA had probable cause to believe that plaintiff's residence was being used to facilitate narcotics trafficking,[13] *see* Thomas Decl., Exh. A, the Court cannot fathom any nexus between the alleged violations of the federal narcotics laws and a single gold chain. Any perfectly law-abiding citizen might be found wearing such a chain when walking on the street, as plaintiff was when the DEA agents accosted him. Nothing in the record suggests that a gold chain might be used as currency in a narcotics transaction or that drug dealers commonly convert their ill-gotten gains into such an item as a cash equivalent. *See United States v. Kenney*, 595 F.Supp. 1453, 1468 (D.Me. 1984). Plaintiff has explained that he purchased the chain at Pepe's Jewelry on 181st Street and Woolworth Avenue in Manhattan. *See* Pimentel Dep. at 39, 41–42. By contrast, the Government has offered no evidence as to when, where, or how the gold chain was acquired, *see United States v. Real Property with Any Improvements Thereon Located at 40 Clark Rd., Sandisfield, Mass.*, 52 F.Supp.2d 254, 264 (D.Mass.1999), let alone that it was purchased with the proceeds of narcotics transactions, *cf. United States v. Moore*, 107 F.Supp. 393, 394 (S.D.N.Y.1952); *see also In re Ginsburg*, 147 F.2d 749, 751 (2d Cir.1945) ("[T]he seizure of the money and securities encompassed things not criminal in themselves and not identified as fruits or instrumentalities of the crime for which the arrest was being made, and was therefore unreasonable under the Constitution."). Finally, a single gold chain hardly qualifies as "unexplained wealth" sufficient to raise an inference that it was purchased with illicit gains. *Cf. 785 St. Nicholas Ave.*, 983 F.2d at 405; *United States v. $2,500 in U.S. Currency*, 689 F.2d 10, 16 (2d Cir.1982).

For these reasons, the Court finds no probable cause to believe that the gold chain was in any way related to unlawful drug activity. *See 40 Clark Rd.*, 52 F.Supp.2d at 264 (holding that the existence of profitable illegal activity did not

---

**12.** Nor would an acquittal have a collateral estoppel effect on the forfeiture action. *See One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 235, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972) ("[T]he difference in the burden of proof in criminal and civil cases precludes application of the doctrine of collateral estoppel."); *Statewide Auto Parts*, 971 F.2d at 904.

**13.** The DEA's search warrant application was based predominantly on information obtained from its special agents and a confidential informant. A finding of probable cause may be based on hearsay, including hearsay elicited from a confidential informant. *See Daccarett*, 6 F.3d at 56; *United States v. Premises & Real Property at 4492 S. Livonia Rd., Livonia, N.Y.*, 889 F.2d 1258, 1267 (2d Cir.1989). Special

Agent Dinino's affidavit attests that on January 17, 1990, he arrested an individual, who later became the Government's confidential informant, leaving plaintiff's residence carrying a briefcase filled with heroin and two bundles of cash. *See* Dinino Aff. ¶ 4 (Thomas Decl., Exh. A). The informant admitted to unlawfully possessing heroin and stated that he or she had obtained the heroin at plaintiff's residence from a person named "Ubee." *Id.* ¶ 5. The informant also claimed to have "observed a large block, rock-like quantity of heroin" inside the residence. *Id.* Later that evening, Dinino and other agents used surveillance observations to corroborate the informant's statements. *See id.*

suffice to establish probable cause that seized vehicles, art, and jewelry were proceeds of such activities). Accordingly, with respect to this particular article of jewelry, summary judgment in plaintiff's favor is appropriate. The DEA shall return the chain to plaintiff within thirty days. *See Kenney,* 595 F.Supp. at 1468 ("Since the requisite connection between [the defendant's] alleged drug dealing and the gold, silver and jewelry seized from his safety deposit boxes has not been shown, there was no probable cause for seizure of those items, and they must be returned to him."). If the chain cannot be located, plaintiff is to receive a sum equal to its current fair market value. *See United States v. Farese,* No. 80 Cr. 63, 1987 WL 28830, at *3 (S.D.N.Y. Dec. 15, 1987).

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is HEREBY DENIED with respect to the "Assorted Jewelry" (Item # 4) and HEREBY GRANTED in all other respects. Plaintiff's cross-motion for summary judgment is HEREBY GRANTED with respect to the aforementioned gold chain and HEREBY DENIED in all other respects. Plaintiff's motion for expedited relief is HEREBY DENIED as moot. Defendant is HEREBY ORDERED to return the chain (or a sum equal to its current fair market value) to plaintiff within thirty days. Finally, the parties are ordered to appear before this Court at the United States Courthouse, 500 Pearl Street, Courtroom 18B, New York, New York, on June 29, 2000, at 10:30 a.m. for a pre-trial conference.

**SO ORDERED.**